NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2021 VT 37

No. 2019-344

| | |
|---|---|
| Gregory C. Wark | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Windsor Unit, |
| | Civil Division |
| | |
| Donald Zucker | February Term, 2020 |

Michael R. Kainen, J.

Victor J. Segale, Rutland, for Plaintiff-Appellee.

Paul S. Kulig and Shannon A. Bertrand of Facey Goss & McPhee, P.C., Rutland, for
 Defendant-Appellant.

PRESENT: Robinson, Eaton, Carroll and Cohen, JJ., and Tomasi, Supr. J., Specially Assigned

¶ 1. **CARROLL, J.** Donald Zucker appeals a summary-judgment decision awarding attorney's fees to Gregory Wark because Zucker refused to mediate a dispute arising out of a purchase and sale agreement. On appeal, Zucker argues that he was not required to mediate because the purchase and sale agreement was not an enforceable contract. We agree, reverse the trial court's grant of partial summary judgment, and vacate the trial court's award of attorney's fees.

¶ 2. The following facts are undisputed. Zucker owns a roughly sixty-five-acre tract of land in Bridgewater, Vermont. In August 2013, Zucker granted an easement to Eugene Heselton, which gave Heselton the right to build a road across a portion of Zucker's tract so that he could access his adjoining property. On December 17, 2014, Wark signed a purchase and sale agreement providing that Zucker would sell his property to Wark. Zucker signed the agreement the next day.

¶ 3.     The purchase and sale agreement was prepared using a pre-printed contract from Vermont Realtors, a brokerage firm.  In paragraph 10 of the agreement, entitled "Special Conditions," the following language was added:

> See attached addendum.  In addition, both Parties agree that this contract is subject to an Attorney Review of the Terms of the Contract with the exception of price by the Purchaser's Attorney and the Seller's Attorney.  Said review shall be done within 30 calendar days of the Seller's signed acceptance of the Purchase and Sale Contract.

The attached addendum outlined the following additional special conditions:

> Purchaser acknowledges that Seller has given Eugene Heselton, a property abutter, permission to construct a private roadway across the land.  As a condition of this offer and prior to closing on the land, Purchaser requires that the terms and conditions of the Easement between Donald Zucker and Eugene Heselton . . . be fully satisfied. . . .
>
> Both Parties agree that this addendum is subject to an Attorney Review of the terms and conditions of the afore[]mentioned Easement by both Purchaser's and Seller's attorneys.  Said review shall be done within 30 calendar days of the Seller's signed acceptance of the Purchase and Sale Contract.  If the Parties are unable to agree to the conditions of this Easement or any proposed changes or additional conditions as proposed by Purchaser's or Seller's attorneys, then either Party may withdraw from the contract, and any funds herein deposited shall be returned to the depositor.
>
> Closing shall take place after such time as all Parties perform their due diligence and the terms and conditions of the Easement have been satisfied, but no later than June 1, 2015.

¶ 4.     In paragraph thirty, the agreement specified that a binding contract would not be created unless the seller and purchaser agreed in a signed writing to the "conditions of any offer(s) and/or counteroffer(s), including any addenda or supplemental conditions" by December 31, 2014. In bold, the agreement provided that if a binding contract was not made by that date, "neither party [would] have any obligations to the other party."  Finally, the agreement contained a mediation clause, which required the parties to submit "any dispute or claim arising out of or relating to th[e] Contract . . . to mediation prior to the initiation of any lawsuit."  If a lawsuit was filed without first seeking mediation, the mediation clause provided that any party would "be entitled to

2

reimbursement of the reasonable cost of attorney's fees or other expenses arising out of such lawsuit" until mediation occurred.

¶ 5. Between January and March 2015, the attorneys for Zucker, Wark, and Heselton exchanged numerous emails discussing, among other things, the status of the easement, the logistics of having an engineer assess the road Heselton was building, and the possibility of moving the closing date. Following these exchanges, Zucker's attorney sent the following email to Wark's attorney:

> Relative to the contract negotiations between Mr. Donald Zucker and your client, Mr. Gregory Wark, and based upon all of the recent flow of communications back and forth regarding the uncertain status of the road/driveway being built by Mr. Eugene Heselton . . . we would simply think it prudent to withdraw the property from the market . . . .

On March 18, 2016, almost a year later, Wark, through counsel, sent a letter to Zucker demanding mediation pursuant to the mediation clause in the purchase and sale agreement. After a second demand for mediation in July, Zucker, through counsel, responded that the contract was properly terminated, and he would not participate in mediation unless ordered to do so by a court.

¶ 6. Wark filed suit alleging breach of contract and fraud and sought specific performance. Zucker moved for summary judgment arguing that the purchase and sale agreement was unenforceable. Wark filed a cross motion for partial summary judgment arguing, in part, that because Zucker declined his request to mediate, he was entitled to attorney's fees under the mediation clause.

¶ 7. The trial court granted summary judgment to Zucker on the breach-of-contract claim, explaining that although the special condition regarding the easement required Heselton to timely construct the easement, the purchase and sale agreement was "silent as to how the terms and conditions were to be enforced against [him]." Because such terms were not outlined in the purchase and sale agreement, the court held that there was no meeting of the minds and therefore no enforceable contract. Alternatively, the court held that Zucker terminated the contract by

3

withdrawing the property from the market, which the addendum incorporated into the agreement expressly "permitted him to do if agreement was not reached as to additional proposed conditions."

¶ 8.    Although the court granted summary judgment to Zucker on the breach-of-contract claim, it concluded that the mediation clause was still enforceable because "courts of external jurisdictions have found that the termination of a contract prior to a demand for alternative dispute resolution (ADR) will generally have no effect on such demand, provided that the dispute in question either arose out of the terms of the contract or arose when a broad contractual [ADR] clause was still in effect." (Quotation omitted.)  Because the mediation clause was still enforceable, and Zucker refused to mediate, the court granted partial summary judgment to Wark and directed him to submit evidence in support of attorney's fees.

¶ 9.    In August 2019, the court awarded $2430 in attorney's fees and costs to Wark.  The court noted that in opposing the requested fees, Zucker misconstrued the court's earlier decision as holding that there was no contract:

> To clarify, the court never held that there was no contract.  Rather, the court specifically stated that "the parties in this case executed a Purchase and Sale [agreement] that included special conditions," but held that the [agreement] was "not enforceable against Mr. Zucker," in part because of the lack of a "meeting of the minds" with respect to those Special Conditions, as well as because [Zucker] terminated the contract when the parties failed to reach agreement as to additional proposed conditions.  [Zucker] has not timely requested reconsideration and the court is not persuaded to amend its decision.

Zucker subsequently appealed the court's grant of partial summary judgment and award of attorney's fees to Wark.

¶ 10.    "We review a grant of summary judgment de novo, using the same standard as the superior court."  Tillson v. Lane, 2015 VT 121, ¶ 7, 200 Vt. 534, 133 A.3d 832.  Summary judgment is appropriate if, resolving all reasonable doubts in favor of the nonmoving party, the moving party can "demonstrate[] that there are no genuine issues of material fact and the party is entitled to judgment as a matter of law."  Smith v. Parrott, 2003 VT 64, ¶ 6, 175 Vt. 375, 833 A.2d

843. Here, there are no disputed material facts. The issue presented is a legal one—whether Wark, pursuant to the mediation clause, is entitled to attorney's fees for Zucker's refusal to mediate.

¶ 11. Zucker argues that because the trial court held that the purchase and sale agreement was unenforceable in granting summary judgment on Wark's breach-of-contract claim—and Wark did not appeal that decision—it necessarily follows that the mediation clause is also unenforceable. In response, Wark argues that the court did not hold that there was no contract; rather, he contends, the court held that the contract was not enforceable against Zucker. Alternatively, Wark argues that the purchase and sale agreement created an obligation to mediate regardless of whether the parties had reached agreement regarding the special condition.

¶ 12. Zucker is certainly correct that because neither party appealed the court's summary-judgment decision on the breach-of-contract claim, the question of whether the purchase-and-sale agreement was enforceable is not directly before the Court. The only question presented is whether the mediation clause is enforceable. Nevertheless, to determine whether a mediation clause is enforceable, we look to contract law. 1 J. Grenig, Alt. Disp. Resol. § 4:14 Enforcement (4th ed. 2020) ("In determining whether a mediation clause is enforceable in the absence of statutory authority, courts should apply contract law."). And whether there is an enforceable contract is a question of law we review de novo. Miller v. Flegenheimer, 2016 VT 125, ¶ 11, 203 Vt. 620, 161 A.3d 524. Accordingly, to answer the narrow question presented in this appeal—whether the mediation clause is enforceable—we consider de novo whether the purchase and sale agreement is an enforceable contract.

¶ 13. "An enforceable contract must demonstrate a meeting of the minds of the parties: an offer by one of them and an acceptance of such offer by the other." Starr Farm Beach Campowners Ass'n, Inc. v. Boylan, 174 Vt. 503, 505, 811 A.2d 155, 158 (2002) (mem.). "To constitute a meeting of the minds, the acceptance must in every respect meet and correspond with the offer, neither falling short of nor going beyond the terms proposed . . . ." Sweet v. St. Pierre, 2018 VT 122, ¶ 12, 209 Vt. 1, 201 A.3d 978 (quotation omitted).

5

¶ 14. We conclude that there was no meeting of the minds because the parties never agreed to the addendum in the manner required by paragraph thirty of the agreement, which specified that a binding contract would not be created "unless all terms and conditions of any offer(s) and/or counteroffer(s), including any addenda or supplemental conditions [were] agreed to in" a signed writing by December 31, 2014. Although the parties incorporated the addendum into the agreement via the special-conditions paragraph, that was insufficient to form a binding contract. According to paragraph thirty, they specifically had to agree to the addendum in a signed writing by December 31, 2014.

¶ 15. Based on the summary-judgment record, there is no evidence the parties agreed to the condition in a signed writing by the December 31, 2014 deadline. Although Wark signed the addendum, Zucker never did—the spot for the seller's initials is blank. In fact, email exchanges between Wark's and Zucker's attorneys indicate that Wark was still proposing additional addenda to the agreement in January and March 2015. Because the parties did not agree to the addendum in a signed writing by December 31, 2014, the purchase and sales agreement is not an enforceable contract, which also means the mediation clause is unenforceable.[1]

¶ 16. We are unpersuaded by the rationale provided by the trial court and the arguments advanced by Wark as to how the mediation clause could be enforceable if the purchase and sale agreement is itself unenforceable. The trial court concluded that the mediation clause was enforceable because "courts of external jurisdictions have found that the termination of a contract prior to a demand for alternative dispute resolution (ADR) will generally have no effect on such demand, provided that the dispute in question either arose out of the terms of the contract or arose

---

[1] Zucker argues that the trial court erred in awarding attorney's fees for two additional reasons. First, Zucker argues that the plain language of the mediation clause only allows for recovery of attorney's fees against the party that files a lawsuit without seeking mediation. Because Zucker did not initiate a lawsuit, he argues that attorney's fees could not be awarded against him. Second, Zucker argues that the trial court's award of attorney's fees in the amount of $2430 lacks a sufficient evidentiary basis. Because we conclude that the mediation clause is unenforceable, we need not address these arguments. See Nolan v. Fishman, 2019 VT 63, ¶ 10 n.2, 211 Vt. 1, 218 A.3d 1034.

when a broad contractual [ADR] clause was still in effect." (Quotation omitted.) It is certainly true that courts have held that ADR clauses—specifically, arbitration agreements—may survive the termination of a valid contract. See Geller v. Temple B'nai Abraham, 415 N.E.2d 246, 248 (Mass. App. Ct. 1981) ("The agreement's expiration and the plaintiff's letters of resignation would not, as a matter of law, preclude arbitration."); County of Orange v. Faculty Ass'n of Orange Cty. Cmty. Coll., 431 N.Y.S.2d 86, 87 (N.Y. App. Div. 1980) (holding that arbitration was required because disputed events occurred before contract expired). These cases are inapplicable here, however, because there was never a valid contract. Wark's demand for mediation neither arose out of the terms of the contract nor arose when a contractual ADR clause was still in effect.

¶ 17. Wark advances two different arguments as to why the mediation clause is enforceable despite the purchase and sale agreement not being an enforceable contract. First, he argues that the trial court only held that the purchase and sale agreement was not enforceable against Zucker, not that there was no contract. We fail to see the legal significance of the distinction Wark attempts to draw—albeit one the trial court also seemed to draw. More importantly, however, regardless of what the trial court held, we consider de novo whether the purchase and sale agreement is enforceable for the purpose of resolving the narrow issue presented on appeal. As outlined above, based on our review of the record, we conclude that the purchase and sale agreement is not an enforceable contract.

¶ 18. Second, Wark argues that even though Zucker is not contractually obligated to sell his land, the purchase and sale agreement amounted to a "base contract" that created a contractual obligation to mediate. A mediation clause certainly may require parties to mediate a dispute relating to the validity of a contract. See Leamon v. Krajkiewcz, 132 Cal. Rptr. 2d 362, 368 (Cal. Ct. App. 2003) ("[R]equiring a party to mediate the question of the validity of [a] contract does not necessarily mean that [the] party concedes the contract is not voidable. A request for mediation can clearly state the party's position that the contract is voidable or invalid . . . ."). In this case, however, the record indicates that the purchase-and-sale agreement did not create any legal

7

relationship or obligations between the parties because it expressly provided, in bold, that if a binding contract was not made by December 31, 2014, "neither party [would] have any obligations to the other party."

¶ 19. In sum, the trial court erred in granting partial summary judgment and awarding attorney's fees to Wark for Zucker's refusal to mediate because the purchase and sale agreement is not an enforceable contract and created no legal obligation for Zucker to mediate. We accordingly vacate the court's award of attorney's fees.

The trial court's decision granting partial summary judgment to Wark is reversed, and the award of attorney's fees is vacated.

FOR THE COURT:

_____
Associate Justice


¶ 20. **TOMASI, Supr. J., Specially Assigned, concurring.** I do not quibble with the majority's legal conclusion that, if the parties never entered into an enforceable purchase and sale agreement, they were not bound by the mediation clause in that document. That is certainly the argument urged by Zucker on appeal. I diverge from the majority, however, in its determination that the summary-judgment record, viewed in the light most favorable to Wark, shows that the parties never agreed to the General Addendum by December 31, 2014, and that, therefore, no enforceable contract was formed between them. I believe the summary-judgment record, at most, suggests a dispute of material fact as to whether the parties entered into an enforceable agreement.

¶ 21. We review the trial court's summary-judgment decision without deference, applying the same standard as the trial court. In re Gay, 2019 VT 67, ¶ 7, 211 Vt. 122, 220 A.3d 769. Summary judgment is warranted when there are no issues of material fact, and a party is entitled to judgment as a matter of law. V.R.C.P. 56(a). In evaluating the state of the summary-judgment record, we rely primarily on the parties' respective statements of material facts and the

8

record evidence cited therein, although we may also consider other materials in the record. V.R.C.P. 56(c)(1), (3).

¶ 22. The summary-judgment record in this case demonstrates that the factual dispute between the parties before the trial court was not whether the parties agreed to the General Addendum; rather, they disputed the effect of that addendum in light of subsequent events. With respect to the parties' agreement to the General Addendum, in the affidavit Wark filed in connection with the parties' cross-motions for summary judgment, Wark stated that the parties executed the purchase-and-sale agreement, including the General Addendum setting forth the special conditions concerning the easement to Haselton, on December 18, 2014. Zucker's summary-judgment motion described the General Addendum as "a contemporaneous addendum."[2] Importantly, Zucker never expressly averred or argued that he did not agree to the Addendum or that it was unenforceable. Instead, he maintained that he properly withdrew from the contract pursuant to the terms of that Addendum. Lastly, the initial step in considering whether a preliminary agreement is enforceable is whether the parties to the writing intended to be bound by it. See Miller v. Flegenheimer, 2016 VT 125, ¶ 16, 203 Vt. 620, 161 A.3d 524. Here, neither the parties nor the trial court engaged in that analysis. For all those reasons, I do not believe the factual record is clear enough for us to hold that no contract existed as a matter of law.

¶ 23. While I conclude there is a dispute of material fact as to the existence of a contract in this case, I join in the result reached by the majority on an alternative legal basis. A secondary holding of the trial court was that, even if the parties formed a contract, Zucker withdrew from that agreement in March 2015. I would adopt that approach.

¶ 24. The General Addendum to the agreement states that: "If the Parties are unable to agree to the conditions of this Easement or any proposed changes or additional conditions as

---

[2] I quote from Zucker's summary-judgment motion because, although Zucker's motion references an attached statement of material facts, I have been unable to locate in the court file any such statement or associated affidavits in connection with Zucker's summary-judgment motion.

proposed by Purchaser's or Seller's attorneys, then either Party may withdraw from the contract." I believe the language of this negotiated provision as to termination is broad and permitted Zucker to withdraw from the deal if the parties failed to agree on the easement or additional conditions.[3] My review of the summary-judgment record confirms that the undisputed facts are that the parties had not reached an agreement as to the easement and additional conditions by March 19, 2015; that Zucker's attorney sent an email withdrawing the property from the market on that date; and that Wark's attorney acknowledged that very point. It was not until nearly a year later that Wark requested mediation. I believe the present record establishes that Zucker effectively terminated the contract, assuming there was one.

¶ 25. While there well may be occasions when a mediation clause can survive the termination of a contract as a general matter, there is no need to reach that knotty issue in this case.[4] Each contract must be construed according to its particular terms. In this instance, the parties' agreement convinces me that the mediation provision was not in force at the time mediation was requested. These parties augmented a standard purchase and sale agreement in several ways. In the General Addendum, they appended the detailed contingency and termination provisions described above. On an adjacent page, they added the following provision: "In the event this contract is terminated by either Seller's or Purchaser's [sic] in accordance with the provisions of any applicable contingency, all contract deposits together with all interest therein to which Purchaser may be entitled shall be forthwith returned to Purchaser and the contract shall be

---

[3] I do not read the General Addendum to limit the power to terminate for disagreements concerning the easement to the 30-day period following the signing of the Purchase-and-Sale Agreement. In any event, the record shows that Wark's attorney began to raise issues and make proposals for modifications concerning the wording and scope of the easement within that period that were not agreed to by Zucker. Those and related disputes regarding the easement continued until the March termination.

[4] While there is strong support for the conclusion that binding arbitration clauses survive the termination of a contract as to certain disputes, see Litton Fin. Printing Div. v. N.L.R.B., 501 U.S. 190, 206 (1991), the nature of nonbinding mediation provisions may not necessarily lead to the same result.

10

of no further force and effect." (Emphasis added.) No doubt, the parties could have drafted a narrower proviso, but they did not. I would give primary effect to that specific term over the more general mediation clause, which is embedded as part of the boilerplate of the contract. See Fairchild Square Co. v. Green Mountain Bagel Bakery, Inc., 163 Vt. 433, 439, 658 A.2d 31, 35 (1995) ("As a matter of contract construction, the specific controls the general.").

¶ 26. In short: these parties agreed that, upon termination, all contract terms—including the mediation provision—would no longer be in effect. Zucker effectively terminated the contract in March 2015. Wark sought mediation in March 2016. Since the parties no longer had any contractual obligations to each other at that point, the trial court's decision to award attorney's fees in connection with the mediation demand must be reversed.[5] On that basis, I concur in the judgment of the Court.

¶ 27. I am authorized to state that Justice Robinson joins this concurrence.

_____
Superior Judge, Specially Assigned

---

[5] The timing of Wark's request for mediation adds further support to that conclusion. The contract established a closing date for the sale of "no later than June 1, 2015"; acknowledged that "time was of the essence"; and provided that "neither party is obligated to extend the date for the Closing." The closing date arrived and passed with no request for mediation. Wark's belated demand for mediation did not come until over nine months after the mandatory closing date and almost a year after Zucker had terminated the contract. Cf. Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO, 430 U.S. 243, 255 n.8 (1977) (noting contention that arbitration demand must be made within "reasonable time" after expiration of agreement).

11