NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 47

No. 22-AP-301

| | |
|---|---|
| Scott Mansfield et al. | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, |
| | Civil Division |
| | |
| Heilmann, Ekman, Cooley & Gagnon, Inc. | June Term, 2023 |

Samuel Hoar, Jr., J.

Pietro J. Lynn and Aliza A. Harrigan of Lynn, Lynn, Blackman & Manitsky, P.C., Burlington, for Plaintiffs-Appellants.

John F. Evers of Shoup Evers & Green, Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Eaton, Carroll and Cohen, JJ., and Johnson, J. (Ret.), Specially Assigned

¶ 1.     **EATON, J.**  Plaintiffs appeal the trial court's grant of summary judgment in favor of defendant on their legal-malpractice and Vermont Consumer Protection Act (VCPA) claims for failure to establish proximate cause.  We conclude that summary judgment was appropriate on the legal-malpractice claim but not on the VCPA claim, and thus reverse and remand.

¶ 2.     The litigation underlying the present appeal came before this Court in Mongeon Bay Properties, LLC v. Mallets Bay Homeowner's Ass'n, 2016 VT 64, 202 Vt. 434, 149 A.3d 940.  To frame the issues presented in this appeal, we briefly restate the factual and procedural history.  Mongeon Bay Properties, LLC (MBP) owned property abutting Lake Champlain in Colchester, Vermont, and leased the property to Malletts Bay Homeowner's Association, Inc. on a long-term

basis. The Association's members subleased individual plots from the Association and owned their own homes thereon. Some of these homes were on the lakefront. Under the lease, set to expire in 2036, the Association had the obligation to keep the property in good condition.

¶ 3.    In 2011, following major erosion damage on a portion of the embankment on the lakefront, MBP's manager, Bruce Mongeon, notified the Association that it was in default for failing to maintain the property and gave the Association forty-five days to make specified, substantial repairs. After the Association failed to make the repairs, MBP filed a complaint against the Association in January 2012 seeking damages and to void the lease for the Association's violation of its terms.

¶ 4.    The Association retained defendant Heilmann, Ekman, Cooley & Gagnon, Inc. in March 2012. Prior to retaining defendant, an Association representative met with a partner of the firm, Thomas Heilmann, to whom they had been referred. The retainer agreement, signed by Heilmann, states that the firm "may assign tasks to [its] associates and paralegals in a manner commensurate with the level of complexity and expertise required." Following retention of the firm, an associate attorney primarily handled the Association's case.

¶ 5.    In the following months, the Association took steps to address MBP's complaints. The parties each sought summary judgment in their favor, and the trial court denied these motions.

¶ 6.    The extent to which settlement negotiations were possible is contested. It is disputed whether, at a pretrial conference, the judge indicated that mediation would be pointless. Mongeon stated in a deposition taken during the discovery process that MBP's objective in the litigation was to terminate the lease; however, plaintiffs propose that this was a strategy to incentivize the Association to perform satisfactory repairs and in fact MBP was open to settlement. Later in the discovery process, the associate attorney wrote a letter stating that he understood that Mongeon was "not interested in any settlement short of terminating" the lease but inviting Mongeon's counsel to "let [him] know if [Mongeon's] opinion changes" because of the "significant costs and risks to each

2

side" were the case to proceed to trial. The letter also stated that the Association was "open to avoiding these costs and risks if possible." Whether MBP's counsel ever received this letter is contested. However, it is undisputed that the associate attorney never communicated a settlement offer to MBP nor did defendant attempt to pursue mediation.

¶ 7. Following a bench trial, the trial court concluded that the Association breached the lease and was in default but declined to grant MBP's request for lease forfeiture. Instead, it awarded MBP damages for remediation and attorney's fees and costs. Both parties appealed. The Association argued that it was not in breach of the lease. MBP appealed the trial court's denial of its request to terminate the lease.

¶ 8. This Court reversed the trial court's decision, concluding that the Association breached the lease and that MBP was entitled to termination of the lease. Mongeon Bay Props., LLC, 2016 VT 64, ¶ 69. Ultimately, the lease was terminated, and the Association's members were evicted.

¶ 9. Members then sued the Association, alleging that it was negligent in its administration of the provisions of the lease requiring it to keep the property in good condition. Members and the Association settled in 2018. As part of the settlement, the Association assigned members its right to sue defendant for legal malpractice. The Association dissolved later that year.

¶ 10. Members then entered an agreement with MBP whereby Mongeon would serve as a witness in a legal-malpractice case against defendant in exchange for the opportunity to receive a portion of members' recovery against defendant.

¶ 11. The Association and members filed a complaint against defendant in the instant case in December 2019, alleging legal malpractice and a violation of the VCPA. The crux of their legal-malpractice claim is a lost opportunity to settle. They assert that defendant was negligent because it should have tried to settle the underlying litigation between the Association and MBP. They propose that, had defendant tried to settle, the Association and MBP would have likely agreed to

3

terms involving repairs and payment of MBP's attorney's fees thus avoiding lease termination and eviction of the Association's members. For the VCPA claim, plaintiffs propose that Heilmann made misleading representations regarding what his level of involvement in the Association's case would be. They allege that the Association relied on these material misrepresentations when retaining defendant.

¶ 12. During the discovery process, Mongeon provided multiple affidavits and was deposed. He repeatedly stated that, despite his deposition in the underlying litigation that MBP was seeking lease termination and MBP's successful appeal of the bench-trial ruling denying lease termination, MBP would have settled the original lawsuit against the Association on appropriate terms. He averred that acceptable terms would have included the Association agreeing to perform the work necessary to remediate and stop the erosion on the lakefront banks, committing to fixing two seawalls identified as being at risk of future failure if and when they failed, and paying MBP's accrued attorney's fees. Plaintiffs also hired an expert, attorney Richard Cassidy, who opined that the case brought by MBP against the Association would likely have settled along the lines described by Mongeon had defendant made reasonable settlement efforts. Defendant moved for summary judgment on plaintiffs' legal-malpractice claim. Defendant argued that, even if it breached its duty of care to the Association by failing to attempt to settle the underlying litigation, plaintiffs did not establish proximate cause, because they could not demonstrate that the underlying litigation was more likely than not to settle.

¶ 13. The trial court granted summary judgment in favor of defendant. On the legal-malpractice claim, the trial court concluded that the undisputed material facts demonstrated that plaintiffs could not establish that defendant's alleged negligence proximately caused their claimed damages. Without analyzing the VCPA claim, for which neither party requested summary judgment, it entered judgment for defendant on all of plaintiffs' claims, stating that "[a]ll of [p]laintiff's claims fail for lack of competent proof of proximate cause."

4

¶ 14. On appeal, plaintiffs argue that the trial court's grant of summary judgment for lack of proximate cause on its legal-malpractice and VCPA claims was in error. Defendant counters that summary judgment was appropriate and proposes that members lack standing to bring their claims.

¶ 15. We review the trial court's grant of summary judgment de novo. Tillson v. Lane, 2015 VT 121, ¶ 7, 200 Vt. 534, 133 A.3d 832. "Summary judgment is proper only where the material undisputed facts show that the moving party is entitled to judgment as a matter of law." Morisseau v. Hannaford Bros., 2016 VT 17, ¶ 12, 201 Vt. 313, 141 A.3d 745 (citing V.R.C.P. 56(a)).

¶ 16. First, we conclude that we need not address members' standing to sue. Second, we determine that summary judgment in favor of defendant was appropriate on the legal-malpractice claim because the Association failed to establish proximate cause. Third, we conclude that judgment was inappropriate on the VCPA claim, because a showing of proximate cause is not required for the Association's claim.

## I. Standing

¶ 17. Defendant argues that members lack standing to bring their claims. We need not reach this argument on appeal. There is no dispute that the Association has standing to sue. See 11A V.S.A. § 14.05(a) (explaining that corporations continue to legally exist after dissolution); Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 383-84 (2d Cir. 2021), cert. denied, __ U.S. __, 142 S. Ct. 757 (2022) (explaining that dissolved corporation's standing to sue requires legal existence, which is matter of state law). Because the Association has standing and we can resolve the issues presented by evaluating the Association's claims, we do not need to evaluate the standing of additional plaintiffs. Gen. Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 402 n.22 (1982). However, defendant correctly observes that if members seek damages different from those sought by the Association on remand, they will need to demonstrate that they have standing.

5

See Town of Chester v. Laroe Ests., Inc., 581 U.S. 433, 439-42 (2017) (explaining that plaintiff must demonstrate standing for each claim and form of relief; therefore, plaintiff that seeks different type of relief from another plaintiff needs to show separate standing). For purposes of this appeal, we will accordingly treat the Association as the only plaintiff.

## II. Legal Malpractice

¶ 18.    The trial court granted summary judgment because it concluded that the Association failed to establish that defendant's alleged negligence proximately caused its injury. It predicted that we would require plaintiffs making a legal-malpractice claim premised on a lost opportunity to settle to prove that, but for the defendant's negligence, a settlement would have been achieved, and the probable terms of that settlement. As a policy consideration, it also concluded that this standard would require a plaintiff to have some contemporaneous evidence. Applying this standard, the trial court concluded that plaintiffs were unable to establish settlement terms to which MBP would have agreed and therefore judgment as a matter of law for lack of proximate cause was appropriate.

¶ 19.    On appeal, the Association argues that there is a genuine dispute of material fact regarding whether a settlement would have occurred but for defendant's alleged negligence. It proposes that it has sufficient evidence that there were terms on which the underlying litigation could and would have settled, had settlement conversations occurred.

¶ 20.    A plaintiff in a legal-malpractice case must establish the following elements: "(1) the attorney owed a professional duty of care to the client; (2) the attorney breached the duty; (3) the attorney's act was a proximate cause of the client's injury; (4) and that the client suffered damages as a result of the injury." Sachs v. Downs Rachlin Martin PLLC, 2017 VT 100, ¶ 17, 206 Vt. 157, 179 A.3d 182. The only legal-malpractice issue raised in this appeal is proximate cause. To meet the proximate-cause requirement, "a plaintiff must prove it is more likely than not that, but for the attorney's negligent conduct, the plaintiff would not have been harmed." Rodrigue v. Illuzzi, 2022 VT 9, ¶ 11, 216 Vt. 308, 278 A.3d 980 (quotation omitted).

6

¶ 21.    The claim here involves a lost opportunity to settle the original lawsuit.  We have observed that, generally, public policy "strongly favors settlement of disputed claims without litigation," and therefore "encourage[s] compromise between the adverse parties before resorting to the judicial system to resolve disputes."  Dutch Hill Inn, Inc. v. Patten, 131 Vt. 187, 192, 303 A.2d 811, 814 (1973).  Attorneys play an important role in negotiating settlements and advising their clients on whether to pursue, accept, or reject settlements.  See Bruning v. L. Offs. of Ronald J. Palagi, P.C., 551 N.W.2d 266, 270 (Neb. 1996) ("An attorney impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." (quotation omitted)); Whiteaker v. State, 382 N.W.2d 112, 115-16 (Iowa 1986) (observing that attorneys have important duty to keep clients fully informed, including when it comes to settlement opportunities).  Acknowledging that clients rely on their attorneys to provide them with advice surrounding litigation and settlement, we join this general legal development and recognize a legal-malpractice claim for a lost opportunity to settle.

¶ 22.    In adopting a standard to evaluate causation for this unique type of claim, we look to persuasive cases from other jurisdictions.  In Whiteaker v. State, the Supreme Court of Iowa addressed a client's claim that an attorney's negligence deprived him of obtaining a favorable settlement.  The court observed that the client "was obligated to establish by a preponderance of the evidence that a settlement probably would have occurred but for the negligence of the [defendant]." 382 N.W.2d at 116.  To satisfy this standard, the court required "proof that the client and party against whom a claim has been asserted would have reached agreement upon a settlement in an ascertainable amount."  Id.  Similarly, the Supreme Court of Montana required a plaintiff seeking to recover for a lost opportunity to settle to prove "(1) that they more probably than not would have recovered a settlement . . . and (2) the likely range of value of the lost settlement."  Labair v. Carey, 2016 MT 272, ¶ 25, 383 P.3d 226.  Various other courts have reached comparable results.  See, e.g., Meiners v. Fortson & White, 436 S.E.2d 780, 782 (Ga. Ct. App. 1993) (stating that, in order to

7

prevail on claim for lost opportunity to settle, plaintiff had to "show that negotiations 'would have' resulted in a settlement; 'might have' or 'could have' is not enough"); McConwell v. FMG of Kan. City, Inc., 861 P.2d 830, 840 (Kan. Ct. App. 1993) (concluding that client failed to establish that attorney's failure to pursue settlement negotiations proximately caused injury where client provided no evidence that settlement was possible); Rizzo v. Haines, 555 A.2d 58, 68 (Pa. 1989) ("[I]n order for one to prevail on a claim of legal malpractice, one must establish that the party against whom the initial claim was asserted . . . would have reached agreement upon a settlement in an ascertainable amount.").

¶ 23. Requiring plaintiffs to establish not only that a settlement probably would have occurred but the terms of such settlement serves an important purpose by preventing unduly speculative claims. Because legal-malpractice claims involve a comparison of what happened and what the plaintiff alleges should have happened, they necessarily require evaluation of a hypothetical scenario in which the defendant attorney was not negligent. Rogers v. Zanetti, 518 S.W.3d 394, 411 (Tex. 2017). When hypothesizing, "[a] plaintiff need not prove causation with absolute certainty, but the evidence must establish causation beyond mere possibility or speculation." Id.; see also Rizzo, 555 A.2d at 65 ("We recognize that a disappointed client may be inclined to subject his or her attorney to the standard that only hindsight may provide, and as a general policy there should be judicial reluctance to relitigate suits in the guise of legal malpractice.").

¶ 24. Adopting a rule that rejects speculative claims regarding hypothetical settlements is also in line with our precedents. In Bourne v. Lajoie, 149 Vt. 45, 540 A.2d 359 (1987), we rejected the plaintiff's argument that she "suffered damages in the form of a lost opportunity to sell" two parcels negligently omitted from a deed, because the argument was "based only on [the plaintiff's] speculation that she would have been able to sell the property, rather than on evidence of an actual offer from a prospective purchaser which she was unable to pursue." Id. at 53, 540 A.2d at 364. Similarly, in Cannata v. Wiener, 173 Vt. 528, 789 A.2d 936 (2001) (mem.), the defendant advised

8

the plaintiff to essentially do nothing in response to a foreclosure action, and the plaintiff argued that the harm caused was his failure to take steps to protect his interests. We affirmed the trial court's grant of summary judgment in favor of the defendant because the plaintiff did not produce evidence to show what steps he could have taken to protect his interests that were unexplored because of the defendant's advice. Id. at 530, 789 A.2d at 939. Bourne and Cannata demonstrate that we have consistently rejected legal-malpractice claims where the theory of causation is "based on mere speculation or conjecture." Id.; see also Palmer v. Furlan, 2019 VT 42, ¶ 9, 210 Vt. 375, 215 A.3d 109 (rejecting claim that alleged negligence was proximate cause of client's injuries because client's "alternative timeline [was] based in speculation and supposition, rather than specific facts").[1]

¶ 25. We hold that, to recover for a lost opportunity to settle, a plaintiff must prove by a preponderance of the evidence (1) that but for the defendant's negligence a settlement would have occurred and (2) the probable terms of that settlement.

¶ 26. Now, we apply this standard. The Association submitted evidence to establish that a settlement would have occurred if defendant tried to pursue one and the probable terms of such settlement. Looking to the proffered settlement terms, we conclude that the Association has not established probable settlement terms with sufficient specificity. See Burgess v. Lamoille Hous. P'ship, 2016 VT 31, ¶ 17, 201 Vt. 450, 145 A.3d 217 (stating that, on summary judgment, evidence is viewed in light most favorable to nonmoving party). Because this appeal can be resolved on that prong of the test alone, we need not assess whether the Association submitted sufficient evidence to

---

[1] Nor does this rule require us, as the Association insists, to overrule Estate of Fleming v. Nicholson, 168 Vt. 495, 724 A.2d 1026 (1998), and its progeny. Estate of Fleming involved an attorney failing to disclose a cloud on title before the client purchased the property, which diminished the property's value, not a lost opportunity to settle. To the extent the Association proposes that causation is satisfied any time a client relies on an attorney's expertise, that reading is overly broad. In Estate of Fleming, the outcome was entirely in the client's control if properly advised, because they could have chosen to avoid the risk by not purchasing the property. See 168 Vt. at 499, 724 A.2d at 1026; see also Sachs, 2017 VT 100, ¶ 25 (citing Estate of Fleming, and concluding causation was established where client relied on attorney's advice regarding filing date and client would have filed on time but for advice).

survive summary judgment on whether Mongeon was actually open to settling with the Association rather than seeking termination of the lease.

¶ 27. Relying on Mongeon's affidavits and testimony, plaintiff proposes that its evidence demonstrates that MBP would have settled if the Association agreed to (1) perform the work identified by MBP's expert as necessary to remediate and stop erosion on the banks of certain properties, (2) commit to fix two seawalls at risk of future failure if and when they failed, and (3) pay MBP's accrued attorney's fees.

¶ 28. These broad concepts are insufficient to establish the probable terms of a settlement between the Association and MBP. Significantly, besides a general monetary estimate of the cost of the work to be done on the banks, these proposed terms contain no specifics on the scope of the work to be done, the manner in which that work would be done, and how that work would be deemed satisfactorily completed. The absence of such detail is material considering MBP's repeated dissatisfaction with the Association's prior attempts to remediate the erosion damage and prevent future problems. Further, MBP appealed a damages award that was based on its expert's estimate of the necessary cost to repair the banks, again demonstrating that, based on the uncontested facts, not just the cost but the way future work would be done was material to MBP. Similarly, the proposed term for a commitment to fix two seawalls should they fail in the future lacks any standard for what constitutes a failure and for the scope, manner, and cost of fixing such failure if and when it occurred.

¶ 29. Negotiating a settlement, such as the conceptual one at issue, that requires the parties to have an ongoing relationship is more complicated than finding a monetary amount both sides can agree upon. See Catamount Slate Prods., Inc. v. Sheldon, 2003 VT 112, ¶ 22, 176 Vt. 158, 845 A.2d 324 ("[T]he actual drafting of a written instrument will frequently reveal points of disagreement, ambiguity, or omission which must be worked out prior to execution. Details that are unnoticed or passed by in oral discussion will be pinned down when the understanding is reduced to writing."

10

(quotation omitted)). Even where a settlement is proposed only on monetary terms, some courts have rejected probable terms as too speculative where the parties identified too wide a range for a monetary settlement. See, e.g., Fulton v. Woodford, 545 P.2d 979, 985-86 (Ariz. Ct. App. 1976) (affirming directed verdict in favor of defendant where client authorized $15,000 for settlement and opposing party would have settled for $75,000 because record was silent on number amenable to both parties). Here, the speculation is even more extreme—it is difficult to imagine how the general concepts identified by Mongeon could govern an ongoing relationship between the Association and MBP and therefore how the parties could have agreed to end the underlying litigation upon such vague promises. See Quenneville v. Buttolph, 2003 VT 82, ¶ 16, 175 Vt. 444, 833 A.2d 1263 (explaining that binding agreements "must contain all of the material and essential terms"); see also Sheldon, 2003 VT 112, ¶ 22 (observing that, absent writing, disagreement on details regarding substantive terms prevented parties from reaching binding, enforceable settlement agreement). Ultimately, Mongeon and expert-witness Cassidy presented settlement concepts which might be used to form an agreement, not the probable terms of one.

¶ 30.    The Association is correct that we have held that "circumstantial evidence is enough to survive summary judgment on the issue of proximate cause of an attorney's negligence." Cannata, 173 Vt. at 530-31, 789 A.2d at 939. However, that observation does not aid the Association here. Summary judgment is appropriate where, as here, the uncontested material facts demonstrate that the defendant is entitled to judgment as a matter of law. V.R.C.P. 56(a). We have evaluated the terms the Association asserts constitute the probable settlement and concluded that they are insufficient to establish proximate cause.[2] Summary judgment in favor of defendant was appropriate on the Association's legal-malpractice claim.

_____

[2] Because we are able to resolve this question based on the Association's proposed settlement terms, we do not reach its additional arguments that the trial court erred by concluding: that Mongeon's statements could not be considered because they were contained in a "sham affidavit"; that the Association needed contemporaneous evidence of the probable terms; and that defendant

11

### III. Vermont Consumer Protection Act

¶ 31.    The trial court also granted summary judgment in favor of defendant on the Association's claim under the VCPA, reasoning that the Association had not presented sufficient proof of proximate cause.  The Association argues that the trial court incorrectly concluded that their VCPA claim required proof of proximate cause.  Defendant counters that proximate cause is an essential element of a VCPA claim and that it is missing here.[3]

¶ 32.    The VCPA forbids "unfair or deceptive acts or practices in commerce."  9 V.S.A. § 2453(a).  Generally, for representations made in the practice of law, it covers entrepreneurial conduct but not the provision of legal advice.  Rodrigue, 2022 VT 9, ¶ 32.  "Commercial aspects of the law include advertising, billing and collection practices, fee arrangements, and methods of obtaining, retaining and dismissing clients."  Id. (quotation omitted).  To sustain a consumer-protection claim, a plaintiff must (1) prove facts that meet the definition of an unfair or deceptive act under 9 V.S.A. § 2453(a), and (2) demonstrate the prerequisites to a private action under 9 V.S.A. § 2461(b).  Dernier v. Mortg. Network, Inc., 2013 VT 96, ¶ 56, 195 Vt. 113, 87 A.3d 465.

---

had the burden of proving that the Association could not have raised the funds necessary to follow through on the probable settlement terms.

[3] These arguments were not raised below; however, the parties had no opportunity to present arguments because the trial court entered judgment in favor of defendant on the VCPA claim sua sponte.  In this circumstance, where the parties could not have reasonably anticipated the proximate-cause issue until after the trial court had granted summary judgment on the VCPA claim for lack of proximate cause, we will not require the parties to have raised their proximate-cause arguments below.  See Vt. Nat. Tel. Co. v. Dep't of Taxes, 2020 VT 83, ¶ 66, 213 Vt. 421, 250 A.3d 567 (identifying that Court has discretion to address unpreserved issues).

The Association also states in its principal brief, without citation or argument, that entry of judgment was in error because the trial court did not give it notice and opportunity to present arguments against summary judgment and to demonstrate the existence of a material question of fact.  See V.R.C.P. 56(f).  In its reply brief, the Association presents this argument with citation and explanation.  We note a potential concern regarding waiver, but, regardless, we need not address this argument because it is moot in light of our reversal based on the proximate-cause issue.

¶ 33.    The test for whether a representation is a "deceptive act" under § 2453(a) requires the plaintiff to show that: "(1) the representation or omission at issue was likely to mislead consumers; (2) the consumer's interpretation of the representation was reasonable under the circumstances; and (3) the misleading representation was material in that it [was likely to] affect[] the consumer's purchasing decision." Jordan v. Nissan N. Am., Inc., 2004 VT 27, ¶ 5, 176 Vt. 465, 853 A.2d 40.

¶ 34.    To maintain a private action under § 2461(b), a plaintiff must "show either (1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from an unfair or deceptive act." Dernier, 2013 VT 96, ¶ 56. For reliance claims, no actual injury is required, Peabody v. P.J.'s Auto Vill., Inc., 153 Vt. 55, 57, 569 A.2d 460, 462 (1989), and the monetary recovery permitted is "the consideration or the value of the consideration given by the consumer, reasonable attorney's fees, and exemplary damages not exceeding three times the value of the consideration given by the consumer," 9 V.S.A. § 2461(b). For damages claims, a plaintiff must prove causation and injury, Dernier, 2013 VT 96, ¶¶ 57-63, and the recovery is the amount of damages, Trevor v. Icon Legacy Custom Modular Homes, LLC, 2019 VT 54, ¶ 66, 210 Vt. 614, 217 A.3d 496.

¶ 35.    From this rule statement alone, it is evident that the trial court erred. As a matter of law, proximate cause is not required for all VCPA claims. See Dernier, 2013 VT 96, ¶ 56 (explaining that consumer can establish VCPA claim via reliance or damages). Here, the Association alleges that it relied on defendant's material and misleading representations when deciding to contract with defendant for services. Because the Association's reliance claim does not require a demonstration of proximate cause, the trial court erroneously granted summary judgment on that basis.[4]

---

[4] We conclude here only that the Association's VCPA claim survives summary judgment because reliance claims do not require a showing of proximate cause. To the extent members seek

¶ 36. Defendant additionally argues that the Association's claim involves a non-entrepreneurial aspect of the law to which the VCPA does not apply.[5] We disagree. The Association's claim involves representations made while obtaining a client, which is an entrepreneurial aspect of the law covered by the VCPA. See Rodrigue, 2022 VT 9, ¶ 32 (explaining that VCPA covers deceptive practices in commercial aspects of law, such as "advertising, billing and collection practices, fee arrangements, and methods of obtaining, retaining and dismissing clients" (quotation omitted)). Not all case-staffing decisions are commercial in nature; the nuances of assigning work to associates and paralegals within a firm is a matter of legal discretion. However, when a law firm makes factual representations about case staffing in order to obtain a client, as is alleged here, that is commercial conduct. See Eriks v. Denver, 824 P.2d 1207, 1214 (Wash. 1992) (en banc) (concluding that defendant's breach of fiduciary duty to client was violation of Washington CPA only if misleading omission constituting breach was for "purpose of obtaining clients or increasing profits"); cf. Winton v. Johnson & Dix Fuel Corp., 147 Vt. 236, 240, 515 A.2d 371, 374 (1986) (acknowledging that "statements that imply the existence of accurate and readily ascertainable facts that either concern the law or have legal significance" are actionable under VCPA). Neither of the arguments raised can sustain a grant of summary judgment in favor of defendant on plaintiff's VCPA claim.

relief different from that sought by the Association on remand, i.e., damages, they will need to overcome two hurdles. First, they will need to demonstrate standing for their VCPA claim. Second, if they can establish standing, they will need to show proximate cause to sustain a claim for damages.

[5] Although this argument was not presented below and was not relied upon by the trial court, we address it because defendant did not have the opportunity to raise it below and because, if the argument had prevailed, it would have dispositively resulted in an affirmance. See In re J.L., 2007 VT 32, ¶ 6, 181 Vt. 615, 928 A.2d 474 (mem.) ("[W]e may affirm a decision of a trial court on any legal basis supported by the record, even if it was not the theory relied on by the trial court.").

## IV. Conclusion

¶ 37.     The grant of summary judgment in favor of defendant for failure to establish proximate cause was appropriate for plaintiff's legal-malpractice claim but not for its VCPA claim. We therefore reverse and remand the grant of summary judgment on the VCPA claim.

Reversed and remanded for further proceedings consistent with this opinion.

FOR THE COURT:

_____

Associate Justice