NOTICE:  This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports.  Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2024 VT 24

Nos. 23-AP-263 & 23-AP-264

| | |
|---|---|
| In re Theodore Studdert-Kennedy (Office of Disciplinary Counsel) | Original Jurisdiction |
| | Professional Responsibility Board |
| In re PRB-021-2022 (Office of Disciplinary Counsel) | |
| | January Term, 2024 |

Hearing Panel No. 8
Jennifer E. McDonald, Esq.
Jonathan T. Rose, Esq.
Patrick Burke

Hannah C. Waite and Ian P. Carleton of Sheehey Furlong & Behm P.C., Burlington, for
  Appellant Office of Disciplinary Counsel.

Robin O. Cooley and Evan A. Foxx of Heilmann, Ekman, Cooley & Gagnon, Inc., Burlington,
  for Appellee Respondent.

PRESENT:  Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1.     **EATON, J.**   The Court ordered review of these two Professional Responsibility Board (PRB) decisions on its own motion and consolidated them for purposes of review.  Both decisions stem from a single misconduct petition, which charged respondent with violating various professional-conduct rules while representing a husband in divorce proceedings.  The PRB adopted the parties' stipulated findings, conclusions, and sanctions.  As agreed by the parties, it considered some charges in one decision and recommended a private admonition; it considered other charges in a separate decision and recommended a public reprimand.  Several charges in the petition were left unaddressed.  Because we conclude that it was inappropriate to issue two separate decisions

with different sanctions, we vacate the panel's decisions and remand for additional proceedings consistent with this opinion.

## I. Proceedings Below

### A. Petition for Misconduct

¶ 2.    Respondent is an attorney who was admitted to the Vermont Bar in September 2000.   In June 2022, Special Disciplinary Counsel filed a petition of misconduct, charging respondent with one violation of Rule 1.1, four violations of Rule 3.1, and two violations of Rule 3.4 of the Vermont Rules of Professional Conduct.[1]   The petition contained the following allegations in support of the charged violations.   Respondent represented a client in divorce proceedings.   Shortly before the final divorce hearing, respondent informed the court that neither he nor his client would attend the hearing.   Respondent's client, who was from India, believed the Vermont court lacked jurisdiction over the proceeding.   In an entry order, the court reminded respondent that, under Vermont Rule for Family Proceedings 15(f), "an attorney who has entered an appearance may withdraw only with leave of court," and respondent had not sought or been given leave to withdraw.   Respondent nonetheless did not attend the final divorce hearing or move to withdraw from representing husband at any point.

¶ 3.    Although respondent and his client did not attend the final divorce hearing, respondent submitted a post-hearing filing that challenged wife's proposed findings of fact and conclusions of law.   Special Disciplinary Counsel alleged that respondent knew or should have known that there was no admissible evidence to support the facts set forth in this pleading because husband had not submitted any evidence or attended the final hearing.

---

[1]   Special Disciplinary Counsel indicates that the misconduct petition contained five alleged violations, one of which was dismissed.  The petition appears to set forth seven alleged violations, however, two of which were not directly addressed by the parties or the panel.

¶ 4. Special Disciplinary Counsel also alleged facts related to various motions filed by respondent that were untimely, lacked a factual or legal basis, or were filed in the wrong court. Special Disciplinary Counsel further asserted that respondent filed affidavits from the parties' children in support of a renewed motion to stay, wherein the children expressed their apparent desire to stay in India with husband and limit contact with wife. The motion offered no justification or legal grounds for filing the affidavits, which contravened the trial court's prior denial of husband's motion seeking to allow the children to testify. Respondent offered no explanation why the filing of the affidavits did not violate 15 V.S.A. § 594 and Vermont Rule for Family Proceedings 7(d), which provide that minor children may not testify unless permitted by the court following a hearing on the issue.

¶ 5. Based on these allegations, Special Disciplinary Counsel charged respondent with violating Professional Rule 1.1, which requires a lawyer to "provide competent representation to a client," by failing to follow the procedural rules regarding interlocutory appeals. Special Disciplinary Counsel also charged respondent with four violations of Rule 3.1, which provides in relevant part that a lawyer should not controvert or assert an issue in a proceeding "unless there is a basis in law and fact for doing so that is not frivolous." The alleged violations concerned: (1) respondent's post-hearing submissions that asserted facts without any supporting evidence; (2) his various attempts to take an interlocutory appeal; (3) filing multiple motions regarding the sale of marital home and the appointment of attorney for the children; and (4) filing the children's affidavits without offering any reason why the filings did not violate the applicable rule and statute.

¶ 6. Special Disciplinary Counsel further alleged that respondent violated Rule 3.4(c), which states that a lawyer must not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists." The alleged violations of this rule included: (1) failing to attend the final divorce hearing or withdraw from his representation prior to the hearing, despite clear direction from the court; and (2) filing the

3

children's affidavits notwithstanding a court order that denied a prior motion for the children to testify.

¶ 7. Respondent filed an answer to the petition, admitting and denying various allegations. The parties later agreed to a set of facts, conclusions, and sanctions for the panel's review. In connection with their proposed stipulation, respondent sought a protective order from the panel. Respondent indicated that the parties had agreed to the imposition of two separate sanctions: a public reprimand and a private admonition. He asked that the facts, conclusions, and sanctions related to the private admonition be made confidential. Respondent acknowledged that if the panel approved the stipulation, information concerning the private reprimand would be made public, but it would not otherwise refer to or identify him by name. Special Disciplinary Counsel did not oppose the request, and it was granted by the panel.[2]

¶ 8. The parties filed their proposed resolution as one document. The panel informed the parties that the recommended sanctions would result in two published decisions, and it asked the parties to submit their proposed stipulation in the form of proposed decisions. The panel also asked the parties to identify any precedent for issuing a public reprimand and private admonition to resolve one misconduct petition. Respondent's counsel indicated that he was unaware of any precedent for this approach.

---

[2] The Court granted the parties' request to file their briefs and other materials in the public-reprimand case under seal given the existing sealing order from the PRB in the consolidated private-admonition case. We indicated that these materials would be "sealed from public access unless or until the sealing order is lifted or modified by this Court."

Because a private admonition would not be warranted under the alleged facts, we no longer consider these cases confidential, and we lift the protective order that had applied to these consolidated cases. See A.O. 9, Rule 15(A)(c)(8) ("Only in cases of minor misconduct, where there is little or no injury to a client, the public, the legal system, or the profession, and when there is little likelihood of repetition by the lawyer, should an admonition be imposed."); see also Ctr. for Pro. Resp., Am. Bar Ass'n, Standards for Imposing Lawyer Sanctions (1986) (amended 1992), Standard 1.1 [hereinafter ABA Standards] (similarly stating that private discipline is appropriate only under the circumstances noted above).

B. PRB Decisions

¶ 9. The panel accepted the parties' proposed stipulation of facts, conclusions, and sanctions, and issued two separate decisions. As discussed in greater detail below, the stipulated facts and conclusions addressed the charged violations except for the alleged violations of Rule 3.1 and Rule 3.4 for filing the children's affidavits. The record does not show that these charges were dismissed or disposed of in some other fashion. The stipulated findings added additional context to some of the factual allegations set forth in the misconduct petition. The panel grouped one Rule 3.1 and one Rule 3.4 violation in one decision; it grouped the two additional Rule 3.1 violations and the Rule 1.1 violations in a separate decision. It determined that the first group of violations warranted a public reprimand, and that the second group warranted a private admonition. This Court ordered consolidated review of these decisions on its own motion.

II. Decision on Appeal

¶ 10. "This Court has 'disciplinary authority concerning all judicial officers and attorneys at law in the State.' " In re Manby, 2023 VT 45, ¶ 24, __ Vt. __, 308 A.3d 465 (quoting Vt. Const. ch. II, § 30). "We review the panel's findings of fact for clear error" and review "the panel's legal conclusions, which include its violation determinations and sanction recommendations . . . de novo." In re Wysolmerski, 2020 VT 54, ¶ 22, 212 Vt. 394, 237 A.3d 706. "If our analysis comports with the recommendation of the panel, we will affirm it; if it does not, we will exercise our plenary authority to reach the appropriate conclusions and sanctions." Id. ¶ 39 (quotations omitted)

¶ 11. The issuance of two disciplinary decisions concerning one petition of misconduct was inconsistent with the purposes of the Rules of Professional Conduct, the theoretical framework for sanctions set forth in the ABA Standards for Imposing Lawyer Sanctions, and with our case law.

¶ 12. The Vermont Rules of Professional Conduct are designed "to protect the public from persons unfit to serve as attorneys and to maintain confidence in our legal institutions by deterring future misconduct." In re Wysolmerski, 2020 VT 54, ¶ 39. Sanctions are imposed "to further those two ends," and "not to punish" attorneys. Id.; see ABA Standards, Standard 1.1 ("The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession.").

¶ 13. "The American Bar Association's Standards for Imposing Lawyer Sanctions guide our sanctions determinations." Id. ¶ 3. As we have explained:

> Under this construct, we consider: (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors. The standards provide a presumptive sanction [d]epending on the importance of the duty violated, the level of the attorney's culpability, and the extent of the harm caused. However, the presumptive sanction may be altered "depending on the existence of aggravating or mitigating factors.

In re Robinson, 2019 VT 8, ¶ 33, 209 Vt. 557, 209 A.3d 570 (alteration in original) (quotations omitted).

¶ 14. Each alleged violation must be considered separately within a decision to evaluate the factors above and arrive at a presumptive sanction which may then be altered after consideration of aggravating and mitigating factors. There is no entitlement to the imposition of a lesser sanction for certain conduct when that conduct has occurred in conjunction with other, more egregious, conduct that warrants a more severe sanction. The ABA Standards specifically recognize that "[t]he standards do not account for multiple charges of misconduct." Thus, it explains that in cases of multiple instances of misconduct:

> The ultimate sanction imposed should at least be consistent with the sanction for the most serious instance of misconduct among a

6

> number of violations: it might well be and generally should be greater than the sanction for the most serious misconduct. Either a pattern of misconduct or multiple instances of misconduct should be considered as aggravating factors.

ABA Standards, Theoretical Framework, at 7. We have relied on the language above in cases involving multiple instances of misconduct. See, e.g., In re Wysolmerski, 2020 VT 54, ¶ 46 (citing language above from ABA Standards and imposing greater sanction than presumptive standard for most serious misconduct given that "respondent engaged in both a pattern of misconduct" and "multiple instances of misconduct"); accord In re Disciplinary Proceeding Against Eugster, 209 P.3d 435, 446 (Wash. 2009) (en banc), as corrected (Sept. 23, 2009) ("In determining the appropriate sanction, we examine the lawyer's misconduct as a whole and in context.").

¶ 15. The panel's approach here was inconsistent with the analysis called for in the ABA Standards for Imposing Lawyer Discipline. Examining misconduct piecemeal minimizes the harm that results from multiple instances of misconduct, and it does not further the goals of the professional-conduct rules. It does not allow for a full accounting of the charged conduct, which then undermines proper consideration of the application of aggravating and mitigating circumstances to the highest presumptive sanction associated with the most serious misconduct. Because one decision was confidential in this case, moreover, the conduct sanctioned there could not be explicitly addressed as an aggravating factor in the companion decision, which was public.

¶ 16. We did not endorse the approach taken here in In re Hongisto, 2010 VT 51, 188 Vt. 553, 998 A.2d 1065 (mem.), cited by the parties. In that case, multiple misconduct petitions were filed against the respondent at different times. Id. ¶ 11. Three separate petitions from 2007 and 2008 were consolidated into one case for the PRB's consideration; these charges concerned a trust account overdraft and two client ethics complaints. Id. ¶¶ 2-3, 7. Another misconduct petition was filed in 2009 during the pendency of the first case; the respondent was charged there with appearing in family court while she was not licensed to practice law. Id. ¶¶ 7, 9. Following a

7

hearing in the first case, the panel imposed a six-month suspension. Id. ¶ 1. The following month, the panel held a hearing on the second petition and imposed another six-month suspension, to run concurrently with the sanction imposed in the prior case. Id. This Court ordered review of the cases on its own motion, consolidated them for purposes of review, and agreed with the sanctions recommended by the PRB.

¶ 17.    We are faced with different circumstances here. This case involves one petition for misconduct that alleged numerous rule violations stemming from respondent's conduct representing a single client in a divorce proceeding.[3] For the reasons discussed above, the charged conduct must be considered as a whole in determining an appropriate sanction and the use of two separate decisions frustrates the ability to do so.

¶ 18.    We emphasize that there is nothing inherently inappropriate about stipulating to the resolution of a disciplinary complaint. The issue here is that the terms of the stipulation are inconsistent with the ABA Standards. This Court does not defer to the PRB's proposed sanctions, whether achieved via stipulation or following a formal hearing. We treat the proposed sanction as a recommendation and "[i]f our analysis comports with the recommendation of the panel, we will affirm it; if it does not, we will exercise our plenary authority to reach the appropriate conclusions and sanctions." Id. As set forth above, we do not agree with the panel's analysis here.

¶ 19.    Contrary to the dissent's position, we cannot determine what an appropriate "ultimate sanction" might be in this case because key aspects of the sanction analysis, such as respondent's mental state, have not been resolved, and the panel did not consider the totality of respondent's behavior in its evaluation of aggravating circumstances. Cf. post, ¶¶ 37, 46. As

---

[3] We note that it would be equally appropriate for a single misconduct petition to allege violations concerning different clients and different proceedings over lengthier period of time. See, e.g., In re Wysolmerski, 167 Vt. 562, 562, 702 A.2d 73, 74 (1997) (mem.) (adopting recommended sanction of three-year suspension where respondent was found to have "violated numerous provisions of the Code of Professional Responsibility while serving five clients" over course of five years).

discussed below, the presumptive sanction for a "knowing" violation of Professional Rule 3.4(c)—the mental state <u>required</u> for a violation of the rule—is a suspension, not a public reprimand. See ABA Standard 6.22 (recognizing that "[i]n many cases, lawyers are suspended when they knowingly violate court orders"). This case involves multiple offenses, an aggravating factor not considered by the panel. Because one of the decisions resulted in a private admonition, moreover, it is not clear how the conduct there could be publicly attributed to respondent as an aggravating factor in the companion case and there's no indication that it was in fact considered. There are two additional charged violations as well, including a second violation of Professional Rule 3.4, which the parties and panel failed to address in any way.[4]

¶ 20.     As we have recognized, sanctions are designed "to protect the public from harm and to maintain confidence in our legal institutions by deferring future misconduct." <u>In re Wysolmerski</u>, 2020 VT 54, ¶ 27 (quotation omitted). These goals are not subservient to an expedited resolution of pending disciplinary charges. Cf. <u>post</u>, ¶ 43. The ABA Standards provide the framework that guides our sanctions analysis, including when there are multiple charges of misconduct. They account for an attorney's willingness to acknowledge the wrongfulness of his conduct through the consideration of aggravating and mitigating circumstances. See ABA Standard 9.3 (stating that mitigating factors include "cooperative attitude toward proceedings" and "remorse"). It is appropriate that we continue to follow the guidance set forth in the Standards here.

---

[4] In the case cited by the dissent, <u>In re Pannu</u>, No. 2011-029, Decision No. 136 (Pro. Resp. Bd. Jan. 31, 2011), https://www.vermontjudiciary.org/sites/default/files/documents/136prb.pdf [https://perma.cc/6Z24-HT4V], the PRB panel found the presumptive sanction for a knowing violation of Rule 3.4(c) to be a suspension. It imposed a lesser sanction, however, based on the presence of mitigating circumstances and the absence of any aggravating circumstances. See <u>id</u>.; see also <u>Matter of Koyste</u>, 111 A.3d 587, 587-89 (Del. 2015) (per curiam) (similarly determining that mitigating circumstances warranted reduction in presumptive sanction of suspension). That is not the case here.

¶ 21. Thus, for the reasons set forth above, we vacate the panel's decisions and remand for consideration of respondent's misconduct as a whole, including the resolution, in one way or another, of the charged violations for violating Rule 3.4(c) and Rule 3.1 relating to the submission of the children's affidavits. Notwithstanding our conclusion, we discuss the PRB decisions in additional detail below to address issues that might arise on remand.

1. Public Reprimand Decision, Case No. 23-AP-263

¶ 22. We begin with the public reprimand decision. In that decision, the panel found that respondent violated Rule 3.4(c) by failing to attend the final divorce hearing or withdraw from representing husband prior to the hearing, and that he violated Rule 3.1 by filing a post-hearing challenge to wife's proposed findings of fact without any evidentiary basis for doing so. The panel considered both violations together and appeared to find that respondent violated a duty to the legal system. It found that the improper filings caused wife anxiety and distress and she presumably incurred legal fees in responding to them. The court also incurred time to respond to respondent's post-hearing filings. The panel did not clearly delineate the injury caused by respondent's failure to attend the final divorce hearing.

¶ 23. Importantly, respondent's mental state for these violations was not clearly determined. The panel found in each that respondent acted "at least negligently and potentially knowingly." This creates a problem with the panel's determination that respondent violated Rule 3.4(c), as that rule requires a knowing act, not a negligent or potentially knowing one. See V.R.P.C. 3.4(c) ("A lawyer shall not . . . <u>knowingly</u> disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." (emphasis added)). It is also difficult to see in light of the stipulated facts how the violations here—failing to attend a final hearing despite a court order and filing a response challenging findings despite having presented no evidence at the divorce hearing—could be considered negligent rather than at least knowing. See ABA Standards, Standard 1.1 (defining "negligence" as "the failure of a lawyer

10

to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation" and "knowledge" as "the conscious awareness of the nature of attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result").

¶ 24.   The failure to clearly determine respondent's mental state then creates uncertainty as to the presumptive sanction for each count.  The panel identified the presumptive sanction, apparently for both violations, as a reprimand under ABA Standard 6.23, relying on a negligent mental state.  Standard 6.23 provides:

> Reprimand is generally appropriate when a lawyer negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.

¶ 25.   The panel did not explain why Standard 6.22, which involves a knowing mental state, should not apply.  Under that standard, suspension is appropriate "when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding."  Determining respondent's mental state is a critical step in the sanctions analysis, and it was not done with clarity here.[5]

¶ 26.    Also, the panel's consideration of aggravating and mitigating circumstances appears incomplete.  As mitigating circumstances, the panel cited the absence of any disciplinary record and cooperative attitude toward the disciplinary proceedings.  As aggravating factors, it cited a pattern of misconduct and substantial experience in the practice of law.  It did not identify "multiple offenses" as an aggravating factor or consider if respondent acknowledged the wrongful nature of his conduct.  See In re Wysolmerski, 2020 VT 54, ¶ 44 (considering both "pattern of

---

[5]   The decision also cited Standard 4.13 for reasons that are unclear.  That standard addresses cases where an attorney is "negligent in dealing with client property" and it deals with violation of duties owed to clients.  See id. ("Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.").

11

misconduct" and "multiple offenses" as aggravating factors and rejecting general notion that "impact of an aggravating circumstance due to a pattern of misconduct is somehow lessened if the misconduct occurs within one case and is limited to one client").

¶ 27. The panel did not engage in any substantive analysis of these factors, nor is it clear that it considered the numerous charges in its second decision as aggravating factors. Instead, it appeared to conclude that because there were two mitigating and two aggravating factors that "the mitigating factors and aggravating factors do not weigh in either direction." But cf. In re Wysolmerski, 2020 VT 54, ¶ 50 (noting that cooperation with disciplinary proceeding entitled to little weight because attorney has "professional duty to cooperate with the investigation"). A consideration of these factors beyond their number on each side of the ledger is required.

2. Private Admonition, Case No. 23-264

¶ 28. Similar concerns arise with respect to the second decision. The panel concluded there that respondent violated Rule 1.1 by filing a "notice of appeal" from an interlocutory ruling rather than seeking permission to appeal. The request was both untimely and filed in the wrong court. Respondent also violated Rule 3.1 by (1) filing a motion for permission to appeal and/or for reconsideration without articulating the legal standard for seeking reconsideration or providing any argument for why that legal standard was met, and where there was no good faith reason for the relief sought; and (2) by filing multiple motions regarding the sale of the marital home and seeking appointment of an attorney for the children, which lacked a good faith basis in law.

¶ 29. There is no analysis of the duties violated. The panel found that all of the violations were committed negligently and that they caused either no or minimal harm to client or other party. It noted that respondent did not lose his right to appeal the denial of his motion to dismiss, and it presumably considered the legal fees that wife incurred to respond to the motions and her financial and emotional exhaustion at having to respond to duplicate frivolous findings as either "no or minimal harm." This is inconsistent with its prior decision, however, where it found that injury

12

had resulted from the stress and financial burden imposed on wife from the repeated frivolous filings. See ABA Standards, Theoretical Framework, at 6 (explaining that "[i]n this model, the standards refer to various levels of injury: 'serious injury,' 'injury,' and 'little or no injury,' and "[a] reference to 'injury' alone indicates any level of injury greater than 'little or no' injury"). There is no discussion about injury resulting from interference or potential interference with a legal proceeding. See ABA Standards, Theoretical Framework, at 2 ("The extent of the 'injury' is defined by the type of duty violated and the extent of actual or potential harm.").

¶ 30.   With respect to the Rule 1.1 violation, the panel looked to Standards 4.53 and 4.54, which deal with violations of duties owed to clients and, specifically, a lack of competence. The panel adopted the parties' stipulation that the presumptive sanction for the Rule 1.1 violation was an admonition, finding that respondent's actions demonstrated a lack of understanding of the rules of appellate procedure, involved a single appeal, and caused no actual or potential injury to the client.

¶ 31.   With respect to the two Rule 3.1 violations, the panel looked to Standard 6.2, which concerns abuse of the legal process. The Rule 3.1 violations consisted of (1) filing an untimely and improper notice of appeal from an interlocutory ruling and a subsequent untimely motion for permission to appeal without any good faith argument or legal analysis in support; and (2) filing two motions regarding the sale of the marital home and requesting that the court appoint an attorney for the children, including motions requesting that the court reverse its prior decisions without discussing any good faith arguments for reversal.

¶ 32.   The panel cited Standards 6.23 and 6.24, which provide:

> § 6.23 Reprimand is generally appropriate when a lawyer: negligently fails to comply with a court order or rule, and causes injury or potential injury to a client or other party, or causes interference or potential interference with a legal proceeding.
>
> § 6.24 Admonition is generally appropriate when a lawyer engages in an isolated instance of negligence in complying with a court order

13

or rule, and causes little or no actual or potential injury to a party, or causes little or no actual or potential interference with a legal proceeding.

¶ 33. It considered the presumptive sanction a reprimand as respondent's actions demonstrated a lack of understanding of the rules of procedure. It found, however, that there was no injury to the client and little or no actual or potential injury to the other party. Again, the injury analysis is inconsistent with the panel's companion decision which found injury involving similar conduct.

¶ 34. The panel then looked to the aggravating and mitigating circumstances, again failing to discuss multiple offenses (including another Rule 3.1 violation in its companion decision) and whether respondent expressed remorse, and also failing to explain the basis for its conclusion that the factors "do not weigh in either direction."

¶ 35. At the same time, however, the panel reduced the presumptive sanction from a reprimand to a private admonition. It stated that this was an appropriate sanction "[t]aking into account the mental state, injury, and aggravating/mitigating factors, and the fact that the parties have worked cooperatively and have stipulated to the findings above." It did not consider if this sanction was consistent with that imposed in other cases. The panel's conclusion reducing the sanction is inconsistent with its determination that the aggravating and mitigating factors did not warrant a modification of the presumptive sanction, and it is otherwise unsupportable given the number of violations at issue, including two that called for a presumptive sanction of a reprimand.

¶ 36. These two decisions illustrate why the ABA Standards call for the imposition of one ultimate sanction in cases where there are multiple counts of misconduct. Considering the conduct piecemeal minimizes the behavior and the harm and introduces the opportunity for inconsistencies, as exist here. Respondent's conduct must be considered as a whole, with the most onerous presumptive sanction then subject to a consideration of aggravating and mitigating circumstances. Properly considered among the aggravating factors are other instances of

14

misconduct involving the petition at hand and otherwise. Such an analysis implements the framework set forth in the ABA Standards and serves the goals of lawyer discipline, which is not punishment but "protect[ing] the public from harm" and "maintain[ing] confidence in our legal institutions by deterring future misconduct." In re Wysolmerski, 2020 VT 54, ¶ 27 (quotation omitted).

The panel's decisions are vacated and the cases are remanded for additional proceedings consistent with this opinion.

FOR THE COURT:

_____
Associate Justice

¶ 37. **COHEN, J., dissenting.** I agree in principle with the majority's thorough and well-reasoned opinion. In a typical disciplinary proceeding, the Professional Responsibility Board (PRB) should not issue two separate decisions to resolve multiple violations that occurred throughout a single representative matter. The majority also raises substantial concerns with the two decisions of the PRB, namely, its analysis of the conduct at issue to reach an ultimate sanction. See ante, ¶¶ 19-33. I share those concerns which, under most circumstances, would require this Court's intervention. I part ways with the majority only due to the unique posture of this matter. Here, the PRB accepted a stipulation between the parties and, pursuant to that stipulation, issued two separate decisions addressing two tranches of violations stemming from respondent's representation of a client throughout a single divorce proceeding. Under these circumstances, I would affirm the PRB's choice to issue two decisions, even when the violations occurred during a single matter. As such, I disagree with the majority's blanket proscription on the PRB's ability to issue two decisions to address multiple violations pursuant to a stipulation that the PRB has accepted. Therefore, I respectfully dissent.

15

¶ 38. Central to my conclusion is the significance I place on stipulated resolutions to disputes. We have previously observed that, generally, public policy favors such resolutions in contested matters. Mansfield v. Heilmann, Ekman, Cooley & Gagnon, Inc., 2023 VT 47, ¶ 21, __ Vt. __, 308 A.3d 533 (observing that, "generally, public policy strongly favors settlement of disputed claims without litigation" (quotation omitted)). In my view, that same public policy should carry over to disciplinary proceedings.

¶ 39. Other courts have similarly highlighted the importance of encouraging stipulations that fully resolve attorney disciplinary proceedings, without abrogating their own review processes. See Matter of Skozen, 660 N.E.2d 1377, 1378 (Ind. 1996) (per curiam) ("[W]e accept the agreed sanction of a public reprimand, in part, due to our desire to encourage resolution of disciplinary actions by agreement."); People v. Ellis, 526 P.3d 958, 960 (Colo. O.P.D.J. 2023) ("[T]he Court endeavors to accord parties broad latitude to fashion mutually agreeable resolutions, wishes to honor parties' agreements, and is favorably inclined to accept targeted and proportionate stipulations that protect the public and promote confidence in the legal profession."). Courts have thus given due weight to a disciplinary board's recommendation of a specific sanction pursuant to a stipulated disposition. See Matter of Strauss, 94 N.E.3d 770, 777 n.10 (Mass. 2018) (recognizing that bar counsel and respondents occasionally submit stipulations that "have sometimes led to entry of lesser sanctions, generally in deference to the board's recommendation"); In re Disciplinary Action Against Riehm, 883 N.W.2d 223, 233, 235 (Minn. 2016) (per curiam) (imposing recommended sanction pursuant to stipulation and explaining that prosecuting authority's decision to enter into stipulation for specific sanction "some deference" because it is "in the best position to weight the cost of litigation and to determine when a stipulated discipline will best serve the interests of the [Lawyers Professional Responsibility] Board" (alteration in original) (quotation omitted)).

¶ 40. For instance, the Indiana Supreme Court has stated that it will adopt a stipulated sanction so long as the sanction is within an acceptable range for the misconduct at issue. See Matter of Darling, 685 N.E.2d 1066, 1068 (Ind. 1997) (per curiam). Pursuant to that approach, the court will impose a stipulated sanction even if it would have imposed a harsher sanction had the parties litigated the disciplinary matter. See In re Matter of Miller, 677 N.E.2d 505, 509 (Ind. 1997) (per curiam) (accepting proffered sanction "only to our desire to encourage agreed resolution of disciplinary cases" while commenting that "we would have favored a harsher sanction had this matter been litigated").

¶ 41. Some state bars have formalized such a policy through their governing rules for attorney discipline. The District of Columbia has developed a negotiated-discipline process whereby a respondent and disciplinary counsel can enter a negotiated stipulation on rule violations and a recommended sanction. See D.C. Bar R. XI, § 12.1(a). If the hearing committee approves the stipulation after concluding that it is "justified, and not unduly lenient," it then submits its recommendation to the court. D.C. Bar R. XI, § 12.1(c); D.C. Bd. Prof. Resp. R. 17.5(a)(iii). The court, in turn, has an opportunity to review the committee's approval and recommended sanction under to its own standards. D.C. Bar R. XI, § 12.1(d).

¶ 42. As the Court of Appeals for the District of Columbia has explained, this process "is designed to encourage efficient and timely resolution of attorney-discipline matters." In re Mensah, 262 A.3d 1100, 1103 (D.C. 2021) (per curiam). Pursuant to its own procedures for uncontested discipline agreements, the court will enter an order imposing a recommended sanction unless an exception is filed within a certain time period. Id. However, "[t]his rule is not absolute— we would not impose discipline that is clearly against the law or the public interest, for example, merely because no party took exception to it . . . . Nevertheless, if there are no exceptions to the Board's report and recommendation, our deferential standard of review becomes even more deferential." Id. (citation and quotations omitted). So long as the negotiated disciplinary sanction

is "justified under all of the circumstances," the reviewing court will afford that deference and grant the disciplinary board "flexibility in determining the sanction to be imposed." Id. at 1105.

¶ 43. There is much to gain from applying this general framework to situations like the one we face here. Giving the PRB flexibility to shape sanctions after accepting a stipulated resolution allows the PRB to resolve disciplinary complaints in an efficient and prompt manner. See A.O. 9, Purpose. Doing so also encourages attorneys to recognize why certain conduct runs afoul of our Rules of Professional Conduct, acknowledge when they have engaged in misconduct, and seek the education or help that they may need. Ultimately, that should lead to a more professionally competent attorney and prevent future rule violations. See Reporter's Notes—2021 Amendment, A.O. 9, Purpose ("Assisting attorneys to achieve professional competence is as critical to an effective system of attorney regulation as investigating and prosecuting violations of the Rules of Professional Conduct."). The more confidence the PRB and disciplinary counsel have to seek out stipulated resolutions, the more likely attorneys subject to disciplinary complaints will confront their own conduct and accept the assistance they require. See Mensah, 262 A.3d at 1104 (adopting position that affording disciplinary board flexibility in negotiated-discipline process "will (1) provide incentives for attorneys to agree to negotiated discipline, thereby conserving scarce resources and reducing delay in the disciplinary process[,] and (2) reflect appropriate recognition of the mitigating nature of an attorney's willingness to acknowledge misconduct and accept an appropriate sanction"). In turn, that system will promote our objective in imposing sanctions. See In re Manby, 2023 VT 45, __ Vt. __, 308 A.3d 465 (per curiam) ("The purpose of sanctions is not to punish attorneys, but rather to protect the public from harm and to maintain confidence in our legal institutions by deterring future misconduct." (quotation omitted)).

¶ 44. To facilitate that policy, I think we should provide more deference to the PRB under the narrow circumstances presented in this matter. That means affording the PRB greater weight than what we normally give.

¶ 45. This is not to suggest that, when examining a stipulation that was accepted by the PRB, we abdicate our constitutional responsibility.[6] After all, this Court has the final say when it comes to regulating and disciplining "all judicial officers and attorneys at law in the State." Vt. Const. ch. II, § 30. To that end, I believe we can strike a balance between superintending the legal profession and encouraging prompt resolution of disciplinary proceedings through stipulated dispositions. Although we should give more weight to a PRB's recommended sanction when it accepts a stipulation between disciplinary counsel and a respondent, that does not mean this Court becomes a passive body.[7] This Court must intervene and reject a stipulated sanction when it (1) is outside the acceptable range of comparable violations, see Matter of Darling, 685 N.E.2d at 1068, (2) contravenes public policy, see Iowa Supreme Court Attorney Disciplinary Board v. Gaily, 790 N.W.2d 801, 804 (Iowa 2010), or (3) is otherwise unjustified under the circumstances, see Mensah, 262 A.3d at 1104.

¶ 46. In this instance, I do not believe that the PRB's issuance of two separate decisions pursuant to the stipulation fails for any of these reasons. Even taking all of the violations together to reach an ultimate sanction for the most severe violation, see ante, ¶ 14, a public reprimand for violating Rule 3.4 of the Vermont Rules of Professional Conduct is not outside of an acceptable range. As far as I am aware, this Court has not yet addressed a sanction where an attorney has

---

[6] Nor should my position be interpreted as seeking to apply the type of deference we normally afford decisions of an agency of the executive branch. See In re Robinson, 2019 VT 8, ¶¶ 23-25, 209 Vt 557, 209 A.3d 570 (holding that "deference" Court gives to PRB's recommendation different from deferential standard shown to administrative decisions).

[7] Moreover, I would not give any precedential value to a decision of the PRB implementing a sanction pursuant to a stipulation; none of the PRB, disciplinary counsel, nor members of the legal profession should rely on such resolutions in other proceedings. See D.C. Bar R. XI, § 12.1(d) (providing that opinion "imposing negotiated discipline may not be cited as precedent in contested disciplinary proceedings" unless opinion states otherwise or in certain circumstances pursuant to D.C. Appellate Rules); cf. Matter of Strauss, 94 N.E.3d at 777 n.10 ("The fact that a departure was made from the presumptive sanction in [stipulated resolutions], however, does not require the imposition of a lesser sanction in this [contested] case.").

violated multiple rules including Rule 3.4(c). The PRB, however, has issued a public reprimand where an attorney has violated Rules 3.4(c), Rule 3.4(e), and 8.4(d) of our Rules of Professional Conduct.[8] See In re Pannu, No. 2011-029, Decision No. 136 (Pro. Resp. Bd. Jan. 31, 2011), https://www.vermontjudiciary.org/sites/default/files/documents/136prb.pdf [https://perma.cc/6Z24-HT4V]. And at least one other state court has similarly imposed an ultimate sanction of a public reprimand for multiple rule violations, including its identical version of Rule 3.4(c), despite the presence of arguably more serious circumstances. See Matter of Koyste, 111 A.3d 581, 587, 589-90 (Del. 2015) (affirming public reprimand as sanction for four rule violations for a total of four violations of Rules 3.4(c) and 8.4(d) causing actual injury to judicial process where, as aggravating factors, attorney had substantial experience in practice of law and misconduct put vulnerable victim at risk).

¶ 47. Furthermore, although I agree with the majority that public policy would normally prohibit the PRB from splitting up multiple violations through two separate decisions, see ante, ¶¶ 13-17, the public policy of encouraging prompt and sufficient resolution of disciplinary proceedings, supra, ¶¶ 39-42, ameliorates that concern. Finally, I can see nothing in the two decisions that, when viewed together, render them unjustified under the circumstances.

¶ 48. I reach this conclusion despite my shared discomfort with the PRB's analysis. Had this matter been brought to us under different circumstances, a remand to the PRB would have been necessary. In fact, a harsher sanction might have been more appropriate had respondent continued to dispute the allegations made against him. But the PRB, disciplinary counsel, and respondent agreed on an acceptable sanction for admitted rule violations, with respondent taking

---

[8] The commentary to Standard 6.2 of the ABA Standards notes that "[m]ost courts impose a reprimand on lawyers who engage in misconduct at trial or who violate a court order or rule that causes injury or potential injury to a client or other party, or who cause interference or potential interference with a legal proceeding." See Ctr. For Prof. Resp., Am. Bar. Ass'n, Standards for Imposing Lawyer Sanctions (1986) (amended 1992), Standard 6.2, commentary.

responsibility for his misconduct. And although the stipulated sanction is premised on a hurried analysis, it is not deficient enough to warrant a remand. As such, I would allow the two decisions of the PRB to stand.

¶ 49. I therefore respectfully dissent.

_____

Associate Justice