Filed 05/11/26

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05402
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-3700

| | |
|---|---|
| THE HANOVER INSURANCE COMPANY,<br>     Plaintiff<br><br>     v.<br><br>THE MEDIA FACTORY F/K/A VERMONT<br>COMMUNITY ACCESS MEDIA, INC.; BILL<br>SIMMON; CIARA KILBURN, BRONA<br>KILBURN,<br>     Defendants | DECISION ON MOTIONS |

## RULING ON VCAM'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND OTHER PENDING MOTIONS

This insurance dispute arises from an underlying lawsuit – *Ciara Kilburn, et al. v. Bill Simmon, et al.*, Case No. 20-CV-461 – where a jury returned a plaintiffs' verdict in February 2024 against Defendant The Media Factory f/k/a Vermont Community Access Media, Inc. ("VCAM") and one of its employees related to the employee's secret filming of the plaintiffs while they were changing their clothes. The Vermont Supreme Court affirmed that verdict in *Kilburn v. Simmon*, 2025 VT 32. VCAM's liability insurer, The Hanover Insurance Company ("Hanover"), provided a defense to VCAM throughout that litigation.

In the present insurance case, this Court previously denied Plaintiff Hanover's cross-motion for summary judgment and granted VCAM's cross-motion in part on the parties' competing declaratory judgment claims as to the amount of coverage available under VCAM's insurance policy. *See* Decision on Cross-Mots. for Summ. J., 2025 WL 1448139 (May 14, 2025) (Hoar, J.). This Court then denied Hanover's request for a final judgment on those claims that were decided in the May 14 decision under Rule 54(b) of the Vermont Rules of Civil Procedure, and its related request to stay the remaining claims. *See* Ruling on Pl.'s Mot. for Final and Separate Judgment, 2025 WL 2632259 (Sept. 2, 2025) (Shafritz, J.). Those remaining claims are VCAM's counterclaims for bad faith, negligence, and violation of the Consumer Protection Act.[1]

---

[1] There was also a counterclaim for breach of contract (Count II) that was not directly addressed in the prior summary judgment decision and which this Court previously indicated remained pending. But, as VCAM implies in its present summary judgment motion, the breach of contract counterclaim was resolved indirectly by the prior summary judgment decision on the coverage dispute. *See* VCAM's Mot. for Summ. J. at 1-2 (filed Oct. 14, 2025).

VCAM now seeks summary judgment on two of those remaining claims: bad faith and consumer protection.[2] For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART. Additionally, Hanover's motion for leave to file a sur-reply is GRANTED and its motion to compel is DENIED.

Background

Ciara and Brona Kilburn filed the underlying tort lawsuit on September 18, 2020, alleging claims against Bill Simmon for invasion of privacy and reckless infliction of emotional distress, and against VCAM for negligent supervision, concerning a 2012 incident where Simmon secretly recorded and published footage of the Kilburns undressing at a VCAM facility. That lawsuit resulted in a February 2024 plaintiffs' verdict finding that Simmon had recklessly caused the Kilburns severe emotional distress by an invasion of their privacy, and that VCAM had negligently supervised Simmon. The jury awarded to Ciara and Brona $1.75 million each in compensatory damages against VCAM, for a total judgment of $3.5 million against VCAM, which is accruing interest at a rate of 12 percent per year pursuant to 12 V.S.A. § 2903. The jury verdict was affirmed on appeal on June 20, 2025.

Hanover had issued a Commercial General Liability No. ZHV 8849689 07 (the "Policy") to VCAM, which provided limits of coverage of up to $1 million per "occurrence," as well as a $2 million aggregate limit. Once Hanover became aware of the claims against its insured, without reserving its rights with respect to its obligations under the Policy, Hanover engaged Attorney Kaveh Shahi, Esq. to represent VCAM in the underlying action.

Hanover disclosed its position that coverage under the Policy was limited to a single $1 million occurrence after the verdict issued in the underlying lawsuit. VCAM's Ex. D (Mobley Aff.) ¶¶ 20-23. VCAM then engaged counsel to demand that Hanover continue to defend and fully indemnify it in the underlying lawsuit. Hanover filed the present declaratory judgment action on September 19, 2024, seeking a determination that there was only one occurrence under the policy and that there was no Coverage B available under the policy's terms. VCAM then filed its answer and counterclaims, seeking a declaratory judgment in its favor on the coverage issue and stating counterclaims for breach of contract, bad faith, negligence, and violation of the Vermont Consumer Protection Act.

The parties cross-moved for summary judgment on their competing declaratory judgment claims as to the coverage dispute. This Court denied Hanover's motion and granted VCAM's motion in part, concluding that there were two occurrences and "declar[ing] that Hanover owes VCAM a duty of indemnification under Coverage A of the CGL coverage part of the Policy, up to its aggregate CGL coverage limit of $2,000,000, against the verdict obtained by the Kilburns in the underlying suit." 2025 WL 1448139, at *7.

---

[2] VCAM "reserves its remaining negligence claim for future motion practice as necessary." VCAM's Mot. for Summ. J. at 2 n.3. The Court questions whether a negligence claim is viable in this context. *See generally Murphy v. Patriot Ins. Co.*, 2014 VT 96, ¶ 10, 197 Vt. 438. However, there is no need to address that issue now.

2

VCAM now seeks summary judgment on its bad faith and Consumer Protection Act counterclaims.[3]  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).  "The nonmoving party may survive the motion if it responds with specific facts raising a triable issue," and courts "give the nonmoving party the benefit of all reasonable doubts and inferences." *Caldwell v. Champlain Coll. Inc.*, 2025 VT 17, ¶ 7, 336 A.3d 423 (quotations omitted).

Preliminarily, the Court observes that Hanover's response to the summary judgment motion is procedurally deficient.  "A moving party asserting that a fact cannot genuinely be disputed must support the assertion by filing a separate and concise statement of undisputed material facts consisting of numbered paragraphs with specific citations to particular parts of materials in the record."  V.R.C.P. 56(c)(1).  Similarly, "[a] nonmoving party responding to a statement of undisputed material facts and asserting that a fact is genuinely disputed[ or] that the materials cited do not establish the absence of a genuine dispute, . . . must file a paragraph-by-paragraph response, *with specific citations to particular parts of materials in the record* that the responding party asserts demonstrate a dispute."  V.R.C.P. 56(c)(2) (emphasis added).  "To the extent that the responding party asserts that there are additional material facts that should be considered, the party may file a separate and concise statement of additional material facts in numbered paragraphs," again "*with specific citations to particular parts of admissible materials in the record*."  *Id*. (emphasis added).

Hanover's response fails to meet this standard on two fronts.  First, in its response to VCAM's statement of undisputed facts, Hanover fails to include any citations whatsoever.  Second, in its statement of additional facts, it cites only to exhibit numbers, and not to "particular parts" of those exhibits as the rule requires.  V.R.C.P. 56(c)(2).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion," among other options.  V.R.C.P. 56(e)(2); *see, e.g.*, *Clayton v. Unsworth*, 2010 VT 84, ¶¶ 28-30, 188 Vt. 432; *Gallipo v. City of Rutland*, 2005 VT 83, ¶¶ 26-34, 178 Vt. 244; *Boulton v. CLD Consulting Eng'rs, Inc.*, 2003 VT 72, ¶ 29, 175 Vt. 413.[4]  Accordingly, the Court deems VCAM's facts undisputed for purposes of the summary judgment motion.  Moreover, as discussed below, even assuming Hanover's additional facts were properly supported, they do not effectively controvert VCAM's facts or create any genuine and material disputed issues.

To the extent Hanover asks the Court to deny VCAM's motion "pursuant to [Rule] 56(d)," Pl.'s Opp'n at 24 (filed Dec. 4, 2025), the Court declines to do so.  Hanover has not filed the "affidavit or declaration" required by that rule.  V.R.C.P. 56(d).  (Hanover has now clarified that it does not seek specific procedural relief pursuant to Rule 56(d).  Pl.'s Sur-Reply at 1-2.).

---

[3] The Kilburns also filed a memorandum in support of VCAM's summary judgment motion.

[4] The Court further notes that in its briefing, Hanover references "PSOMF ¶ 34" and "¶ 35," paragraphs which appear not to exist in the record.  *See* Hanover's Opp'n at 22-23.

I.    Bad Faith

"The legal principles governing a claim of insurer bad faith arise out of the insurance company's control of the settlement of a claim brought against the insured. Under the policy provisions, the insured surrenders to the insurer the complete control and management of the lawsuit up to the limit of the policy coverage." *Myers v. Ambassador Ins. Co.*, 146 Vt. 552, 555, 508 A.2d 689, 690-91 (1986) (citation omitted). Because the insurer "has the power, through the control of settlement, to adversely affect the insured's interests, it must necessarily bear a legal responsibility for the proper exercise of that power." *Id*. (quotation omitted).

> A conflict of interest is inherent in the insurer's control of settlement when . . . there is potential exposure in excess of the policy limits. A settlement demand within the policy limits highlights that conflict, inasmuch as it will be in the insured's interest for that demand to be met. Such a settlement is not necessarily in the insurer's best interest, however, for by going to trial the insurer might be able to avoid liability altogether, or obtain a judgment for an amount less than the demand.

*Id*. (citing 14 G. Couch on Insurance 2d § 51:132 (rev. ed. 1982)).

Our Supreme Court has held that "the insurer's legal duty is that of a fiduciary." *Myers*, 146 Vt. at 555, 508 A.2d at 691 (citing *Johnson v. Hardware Mut. Cas. Co.*, 109 Vt. 481, 490-91, 1 A.2d 817, 820 (1938)). As such, it has articulated several principles underlying this duty:

- "When investigating and considering a settlement offer, the insurer must in good faith take into account the interests of the insured, and will be held liable for a judgment in excess of the policy limits if it intentionally disregarded the financial interests of [the insured] in the hope of escaping the full responsibility imposed upon it by its policy." *Id*. (quotation omitted).

- "The insurer is responsible for the acts of its agents, including the attorney retained by the insurer to represent the insured in the underlying action. They are held to the same standard of good faith in their dealings as their principal." *Id*. at 556, 508 A.2d at 691.

- "The insurer's fiduciary duty to act in good faith when handling a claim against the insured obligates it to take the insured's interests into account. The company must diligently investigate the facts and the risks involved in the claim, and should rely only upon persons reasonably qualified to make such an assessment. If demand for settlement is made, the insurer must honestly assess its validity based on a determination of the risks involved." *Id*. (footnote omitted).

- "[T]he insurer must fully inform the insured of the results of its assessment of the risks, including any potential excess liability, and convey any demands for settlement which have been made. The insurer must be careful to give its insured full and accurate information as to settlement possibilities, for full disclosure allows the insured to assess whether he should move to protect his interests." *Id*. (quotation omitted).

4

- "An insured who is kept informed may have further information to give to the carrier; he may use powers of persuasion upon the carrier to increase its offer; he may engage counsel; he may have other courses of action open to him." *Id*. (citation omitted).

- "The insurer's duty to protect the insured is ongoing, and the insurer must inform the insured of significant developments as they arise." *Id*. at 557, 508 A.2d at 692.

"The question of whether an insurer acts in bad faith depends on the specific facts of each case," and is ordinarily "one for the trier of fact." *Id*. "Nonetheless, such determination becomes a question of law when from uncontroverted evidence a reasonable man following the law can draw but one conclusion on the issue." *Id*. (quotation omitted).

VCAM contends that Hanover acted in bad faith in several ways: (1) by soliciting and receiving coverage advice from the defense counsel it had hired to represent VCAM; (2) by failing to make a reasonable settlement offer; and (3) by failing to timely disclose its coverage position regarding the policy limits.

### A. Coverage Advice

It is undisputed that, while Attorney Shahi represented VCAM, Hanover also solicited and received legal advice and guidance from Attorney Shahi related to its coverage obligations under the policy in the underlying lawsuit. Hanover's claims representative, Lauren O'Brien, forwarded to Shahi an email from Simmon seeking coverage under VCAM's policy, and asked Shahi "if Vermont is a 4 corners state." VCAM's Ex. H. Shahi responded with a "quick primer on VT's coverage rules for a CGL policy," including a six-point list that specifically referenced the fact pattern in the underlying action and outlined several possible defenses to providing coverage under the Policy. *Id*.; *see also* VCAM's Ex. D (Mobley Aff.) ¶¶ 14-19; VCAM's Stmt. of Facts ¶¶ 7-9, 11. Shahi's advice was adverse to VCAM's interests because providing coverage for Simmon would have increased the chances for a pre-trial settlement. VCAM's Ex. D (Mobley Aff.) ¶ 16. Neither Hanover nor Shahi informed VCAM that Shahi was giving Hanover advice about its coverage obligations under the policy. *Id*. ¶¶ 17-18. Ultimately, Hanover took the position that no coverage existed for Simmon.

In an attempt to create a genuine dispute of fact, Hanover relies only on a separate internal email where O'Brien stated "[t]here is no coverage for criminal acts" under the policy. Hanover's Ex. H; Hanover's Stmt. of Additional Facts ¶ 9. According to Hanover, "[t]his internal communication makes clear that Hanover had already reached a conclusion regarding coverage for Mr. Simmon's alleged conduct – namely, that the Policy did not provide coverage – before the email cited by VCAM was sent." Hanover's Opp'n at 14. This contention is wrong. First, the email cited by Hanover was sent on October 20, 2020 at 10:54 AM, a full 42 minutes after the email from O'Brien to Shahi cited by VCAM (which was sent on the same date at 10:12 a.m.). *Compare* VCAM's Ex. H *with* Hanover's Ex. H. Second, in the email cited by Hanover, O'Brien goes on to say that "I don't believe [Simmon] meets the definition of an insured nor do his actions meet the definition of an occurrence, but it likely makes sense to ask Terry since I

think this claim should probably be reviewed by his team." Hanover's Ex. H. That indicates that Hanover had not, in fact, made a decision on coverage for Simmon at that time.

B.     Settlement Offer

Next, VCAM contends that Hanover never made a reasonable settlement offer, that the settlement offers it did make were unreasonably based on Shahi's speculation and his downplaying and trivializing of the plaintiffs' damages, and that Shahi's risk appraisal was "flawed from the outset" and "obvious[ly] insufficien[t]." VCAM's Mot. for Summ. J. at 7-10. It is undisputed that Hanover had the opportunity to settle the case at or below the $2 million policy limit, as the Kilburns' initial demand was $2 million (that is, $1 million per plaintiff). Pl.'s Stmt. of Facts ¶ 14. Hanover's initial offer was $10,000 per plaintiff, and its final offer was $50,000 per plaintiff. Hanover's Stmt. of Additional Facts ¶ 24; Hanover's Ex. O ¶¶ 21-22.

Attorney Shahi's Pretrial Report estimated that damages awarded by the jury would "be in the $100,000 to $150,000 per plaintiff" range. VCAM's Stmt. of Facts ¶ 15; VCAM's Ex. F. Shahi had previously stated in VCAM's September 26, 2023 mediation statement that damages would be "marginal," based in part on his contention that the video of the Kilburns was less explicit than "television shows and movies" or "social media photos of outings at the beach." VCAM's Ex. G. He further asserted that "[n]o one really cares [about nudity to the extent shown in the video] except those who suffer from a disorder for voyeurism." *Id*.

In an earlier January 3, 2023 email to O'Brien (Hanover's claims representative) Shahi estimated the Kilburns' case would amount only to "low, five-figure exposures" because "[g]irls in scant bikinis, underwear or topless are common sights on movies, TV and internet." VCAM's Ex. J. Shahi further stated "I get that there was an invasion of privacy (as much as you can expect in a utility room and an admittedly creepy older guy hanging around after-hours, empty building) but the invasion was not severe." *Id*. O'Brien responded, "I tend to agree. I don't see much value here." *Id*. In a November 17, 2021 email to O'Brien, Attorney Shahi stated "Ciara supposedly has PTSD b/c her bare breasts could be seen on line. She should take a walk at lunchtime in Stockholm in summers with many women office workers exposing their breasts to tan with the short Scandinavian sun!" VCAM's Ex. K.

In another September 24, 2021 email to O'Brien, Attorney Shahi suggested that because "Ciara repeatedly took off her bra while her younger sister never did" that "Ciara was aware of the hidden camera and was playing to it." VCAM's Ex. L. Neither Shahi nor Hanover ever disclosed to VCAM that Attorney Shahi had personally received a $500,000 jury verdict in his favor on a Vermont invasion of privacy claim that did not involve sexual exploitation. VCAM's Stmt. of Facts ¶ 22; *Shahi v. Madden*, 2008 VT 25, 183 Vt. 320.

On the verdict form, the sole question concerning VCAM was whether "VCAM negligently supervise[d] Simmon." VCAM's Ex. B. In a February 8, 2024 request, Attorney Shahi did not request jury instructions or a verdict form splitting the verdict against VCAM into separate items for each of Simmon's injurious acts. VCAM's Ex. E. On February 29, 2024, after the verdict was returned, Attorney Shahi emailed Hanover's representative and advised that "the reasonable verdict range here was $200k to $950k per plaintiff" based on a review of "some of

6

the verdicts we had in the same court (possibly same judge)" for prior claims involving "negligent supervision with resulting sexual abuse and PTSD." VCAM's Ex. N. The email reflects that Attorney Shahi had not reviewed these verdicts prior to the trial. *See id.*

In attempting to demonstrate the existence of disputed material facts, Hanover insists that the "record includes substantial evidence that [it] acted in accordance with its duty to evaluate settlement opportunities," including "both counsel input and claims-handling expertise." Hanover's Opp'n at 10. It cites the unremarkable fact that it "participated in mediation." *Id.* It also notes that it offered $50,000 per plaintiff, *id.*, but of course the entire point of VCAM's bad faith claim is that this offer was unreasonable.[5] Hanover also relies on Ms. O'Brien's affidavit – cited only in its statement of "additional" facts and without proper citation to "particular parts" therein, in contravention of Rule 56(c)(2) – which provides the following conclusory assertion:

> My evaluation of the claim and resulting settlement authority were based on my professional judgment as a claims adjuster with more than 6 years of experience, the information and analysis provided by Attorney Shahi, and Hanover's internal review process. Hanover's decision-making was reasoned, documented, and consistent with accepted industry standards.

Hanover's Ex. P ¶ 9; *see also* Hanover's Stmt. of Additional Facts ¶ 23. Hanover concedes that Shahi's comments were "blunt," but asserts that it considered his opinions "as only one of several factors in reaching its determination on case value," relying on Ms. O'Brien's affidavit. *Id.* ¶ 27.

Hanover also relies on another unremarkable proposition, that "Attorney Shahi did communicate with Seth Mobley [VCAM's executive director]," Hanover's Opp'n at 12, and cites to an exhibit consisting of 300 pages of email correspondence between the two. Hanover's Stmt. of Additional Facts ¶ 7; Hanover's Ex. F. Hanover further highlights the fact that Attorney Shahi independently conducted verdict research, which he shared with VCAM. Hanover's Ex. K. That demonstrates only post-verdict research, however, and the range is significantly higher than its pre-trial settlement offers, signifying that Hanover did no pre-trial verdict research. Knowledge of the information in Exhibit K almost certainly would have resulted in higher settlement demands by Hanover.

### C. Coverage Position

Additionally, VCAM asserts that Hanover acted in bad faith by failing to timely disclose its coverage position regarding the policy limits. Neither Hanover nor Attorney Shahi informed VCAM of any assessment with respect to risks associated with the defense, including a potential verdict in excess of the Policy's coverage limits. VCAM's Stmt. of Facts ¶ 10. Hanover repeatedly told VCAM that any verdict in the underlying lawsuit would be within the limits of its Policy coverage or reversed on appeal. *Id.* ¶ 12. Throughout litigation in the underlying lawsuit,

---

[5] To the extent Hanover relies on the mediator's comments about the Kilburns' settlement demands, *see* Hanover's Stmt. of Additional Facts ¶ 24; Hanover's Ex. O, that appears to be an inadmissible mediation communication. *See* 12 V.S.A. § 5715(a).

VCAM repeatedly asked for Hanover's position regarding the limits of insurance under the Policy, but Hanover's representatives responded that its position had not yet been determined. *Id*. ¶ 13. Hanover did not disclose its position that coverage under the Policy was limited to a single $1 million occurrence until after the verdict issued in the underlying lawsuit. Ex. D (Mobley Aff.) ¶¶ 20-23.

Hanover attempts to dispute these facts only in its separate statement of "additional" facts. Relying solely on Ms. O'Brien's affidavit, Hanover asserts that it did not receive any "direct request from VCAM" regarding the applicable coverage under the policy, and that it did not make "any reassurances regarding a verdict that would fall within the [the policy] limits." Hanover's Stmt. of Additional Facts ¶¶ 29-30; Hanover's Ex. P ¶¶ 12, 13. Of course, Hanover did not properly cite the specific paragraphs numbers of the affidavit, and therefore the Court need not and does not accept those facts as true. *See* V.R.C.P. 56(c)(2). Even assuming it did, however, those asserted facts do not explain why it waited so long to inform VCAM of its coverage decision.

Hanover further contends that it "promptly" communicated its coverage decision within one day of reaching its internal determination. Hanover's Stmt. of Additional Facts ¶¶ 12, 21; Ex. J (Mar. 6, 2024 email). But again, the email Hanover relies on was sent *after* the jury verdict. Moreover, the Court notes that elsewhere, Hanover effectively admits that it made its coverage determination prior to mediation in September 2023. *See* Hanover's Stmt. of Additional Facts ¶ 25; Ex. P (O'Brien Aff.) ¶ 10.[6] While Hanover also argues that its coverage position was based on a reasonable legal argument that resulted in a good faith dispute between the parties, that is a red herring. The core issue is whether Hanover waited too long to make and inform VCAM of its coverage position.

D.      Conclusion

The Court concludes that, based on this summary judgment record and the parties' respective statements of facts as governed by Rule 56, VCAM has established its counterclaim for bad faith as a matter of law and is entitled to summary judgment on that claim. The undisputed facts demonstrate that Hanover, through its actions and material omissions, violated the core principles underlying the claim of insurer bad faith. As noted above, an insurer "must diligently investigate . . . the risks involved in the claim" and "must honestly assess" the validity of any settlement demand "based on a determination of the risks involved." *Myers*, 146 Vt. at

---

[6] The Court rejects Hanover's attempt to substitute O'Brien's original affidavit with a "revised" affidavit. *See* Hanover's Sur-Reply at 11; Hanover's Ex. T (filed with Hanover's Sur-Reply on Jan. 26, 2026). First, the new affidavit blatantly contradicts the original, with no persuasive explanation for the contradiction. *Compare* Hanover's Ex. P ¶ 10 *with* Hanover's Ex. T ¶ 10; *see also* VCAM's Opp'n to Hanover's Mot. to File Surreply at 3-5 (filed Jan. 28, 2026). Second, Exhibit T is not cited in any statement of facts as required by Rule 56(c)(2) (and, as discussed above, even the original affidavit (Ex. P) is not cited properly in Hanover's statement of additional facts). Lastly, the revised affidavit is not dated properly before the signature block (it states "January 2026" but the space to indicate the day is blank).

556, 508 A.2d at 691. Additionally, the "insurer must fully inform the insured of the results of its assessment of the risks, including any potential excess liability." *Id*.

Here, Hanover did none of the above. It conducted neither a diligent investigation of the risks nor an honest assessment of the validity of the Kilburns' settlement demand. It unreasonably relied on Attorney's Shahi's speculative, specious, and seemingly off-the-cuff remarks about the potential value of the Kilburns' claims, and it did not conduct any pre-verdict jury research that would inform the potential amount of a jury award. Even accepting all of Hanover's improperly supported "additional facts" as true – again, which the Court need not and does not do in accordance with Rule 56(e)(2) – the most Hanover can muster to combat VCAM's facts are immaterial post-verdict jury research and a wholly conclusory assertion from its claims representative. *See* Hanover's Ex. P ¶ 9. None of Hanover's "facts" demonstrate a diligent and honest *pre-verdict* investigation or assessment of VCAM's risks and of the Kilburns' settlement demand. Hanover had every opportunity to produce specific evidence of any such pre-verdict investigation and assessment, given that any such evidence would be in its sole possession. The fact that it did not do so is telling.

This is not a case where counsel "merely undervalues a claim prior to [] trial," 14A Couch on Ins. § 206:17, or where the failure to settle was "based solely on a mistake in judgment or on a failure to predict correctly the outcome of the lawsuit." *Id*. § 206:19. Such scenarios would not rise to the level of bad faith. *See, e.g., Monarch Cortland, Div. of Monarch Mach. Tool Co. v. Columbia Cas. Co.*, 646 N.Y.S.2d 904, 906 (N.Y. App. Div. 1996) ("At most, plaintiff's evidence establishes defendant's erroneous belief that plaintiff's liability would not exceed the primary policy limits. Such an error in judgment cannot serve as the predicate for a bad-faith action."). Rather, this is a case where counsel's evaluation of the claim was "unrealistically optimistic" such that the insurer's reliance on that evaluation was "defective." *Emps. Nat. Ins. Co. v. Gen. Acc. Ins. Co.*, 857 F. Supp. 549, 554 (S.D. Tex. 1994); *see also Greater New York Mut. Ins. Co. v. N. River Ins. Co.*, 85 F.3d 1088, 1092-93 (3d Cir. 1996) (insurer acted in bad faith in refusing to settle potential $5 million personal injury claim where plaintiff's settlement demand was $700,000); *Urb. v. Zurich Am. Ins. Co.*, 752 F. Supp. 3d 310, 337 (D. Mass. 2024) (insurer "conducted an unreasonable investigation" where it "rel[ied] upon [its] own non-expert opinions and theories"); *Twentieth Century-Fox Film Corp. v. Harbor Ins. Co.*, 149 Cal. Rptr. 313, 317-18 (Ct. App. 1978) (insurer liable for excess judgment where it failed to accept reasonable settlement offer within policy limits and excess liability was probable); *Barnes v. Oklahoma Farm Bureau Mut. Ins. Co.*, 11 P.3d 162, 176 (Okla. 2000) (counsel's advice to insurer was "utterly untenable and could not have been reasonably relied on by insurer).

Nor did Hanover fully inform VCAM of the risks, particularly with regard to VCAM's potential – and eventually realized – excess liability. Indeed, the undisputed material facts establish that Hanover repeatedly told VCAM that any verdict in the underlying lawsuit would be within the limits of its Policy coverage or reversed on appeal. VCAM's Stmt. of Facts ¶ 12. This ties in directly with the coverage position issue; VCAM repeatedly asked for Hanover's position regarding the limits of insurance under the Policy, but Hanover's representatives responded that its position had not yet been determined until after the jury returned a verdict well above the Policy limits. *Id*. ¶¶ 13, 26. The risk of a verdict that exceeds the policy limits and the

9

fact that Hanover had decided that the policy limit was $1 million rather than $2 million are significant factors that VCAM had a right to know as early as possible.  *See* 14A Couch on Ins. § 208:17 ("The duty of good faith and fair dealing requires an adjuster to inform the insured as to the extent of coverage before negotiating a settlement."); *see also Cotton States Mut. Ins. Co. v. Trevethan*, 390 So. 2d 724, 727 (Fla. Dist. Ct. App. 1980) (bad faith established where insureds "had not been advised of the possibility of an excess verdict" and "had not been given complete, good faith information as to their own potential exposure").  Timely disclosure would have "allow[ed] . . . [VCAM] to assess whether [it] should move to protect [its] interests."  *Myers*, 146 Vt. at 556; *see also id*. ("An insured who is kept informed may have further information to give to the carrier; he may use powers of persuasion upon the carrier to increase its offer; he may engage counsel; he may have other courses of action open to him."); Dec. on Cross-Mots. for Summ. J., 2025 WL 1448139, at *3 (May 14, 2025) ("[K]nowledge that the insurer may take the position that it owes only $1 million of coverage, when the policy provides a $2 million aggregate, is precisely the kind of information an insured would want to know before yielding control of the defense to the insurer.  Equally, and relatedly, when a complaint alleges more than one event as a basis for liability, knowledge that the insurer believes that all such events add up to no more than one 'occurrence,' and so dramatically increase the insured's uninsured exposure, is critical information that ought to be shared.  The insured might then engage personal counsel to persuade defense counsel and the insurer to minimize the insured's uninsured exposure.  It might also press for a [different] verdict form . . . .").

Compounding the bad faith articulated just above is the fact that Hanover requested, and Attorney Shahi gave, coverage advice that was adverse to VCAM's interests.  This constitutes an obvious conflict of interest which falls at the very core of the bad faith doctrine.  *Myers*, 146 Vt. at 555, 508 A.2d at 691; *see also Stetler v. Fosha*, 809 F. Supp. 1409, 1429-30, 1433 (D. Kan. 1992), *aff'd,* 7 F.3d 1045 (10th Cir. 1993) (finding that insurer acted in bad faith "by failing, through its attorneys, to fully inform" insured "of the existence of a conflict between her interests and [insurer's]"); 14A Couch on Ins. § 206:31 (discussing insurer's failure to inform insured "of potential conflict of interest" as basis for bad faith).  Again, knowledge of such conflict would have allowed VCAM to decide whether to take further action to protect its interests, such as engaging separate counsel.  *See Myers*, 146 Vt. at 556, 508 A.2d at 691.

Additionally, ample evidence in the record compels the conclusion that Hanover acted intentionally or "intentionally disregarded the financial interests of the insured in the hope of escaping the full responsibility imposed upon it by its policy" as a matter of law.  *Myers*, 146 Vt. at 555, 508 A.2d at 691 (quotation omitted).  "Good or bad faith is a state of mind, provable by circumstantial as well as direct evidence."  *Id*. at 555-56, 508 A.2d at 691 (citation omitted).  Hanover reached out to the very defense counsel it had hired to represent VCAM, asked him for advice on a coverage issue related to the very same case, and then never told VCAM about it.  It repeatedly rebuffed VCAM's requests for its coverage position and then shared its position that only $1 million of coverage was available after the verdict, despite apparently having made that determination months earlier.  It also relied on patently unreasonable and speculative advice from counsel in evaluating the settlement demands.  In considering all the undisputed facts together, a reasonable jury would have to conclude that Hanover intentionally disregarded VCAM's financial interests through these acts and omissions.

Throughout its Sur-Reply, Hanover largely addresses each act of bad faith individually and argues that each act does not constitute bad faith as a matter of law. In concluding that Hanover has acted in bad faith, the Court stresses that it does not rely on any one act or omission by itself. Any individual act or omission alone might not constitute bad faith as a matter of law. Instead, the Court relies on all the acts and omissions together, as established by the undisputed material facts. "Standing alone, these omissions might not by themselves support a finding that the insurer breached its duty to act in good faith. When taken together, however, it is clear that the insurer acted in bad faith as a matter of law." *Myers*, 146 Vt. at 557-58, 508 A.2d at 692. While the facts here are arguably not as extreme as in *Myers*, where the insured was not told of most key developments in the case, the "sum total of this lack of communication on key matters" is effectively the same – VCAM was "kept in the dark" on those "key matters" and lost its ability to protect its interests. *Id*. at 557, 508 A.2d at 692.

The Court further clarifies that not all of VCAM's facts are equally persuasive in establishing bad faith. For example, the failure to disclose Attorney Shahi's personal jury verdict for invasion of privacy from 20 years earlier is largely immaterial, and the specific verdict form request may have been merely a strategic decision by defense counsel. These facts are of limited persuasive value. But VCAM's other facts – that is, related to Hanover's failure to disclose the fact that Attorney Shahi provided it with coverage advice, the failure to reasonably investigate or make a reasonable settlement offer, and the failure to timely disclose its coverage position – together amply establish bad faith as a matter of law.

Hanover also contends that expert testimony is required to prove VCAM's bad faith claim, though it cites no Vermont case law requiring such testimony. *See* Hanover's Opp'n at 7-11. To this Court's knowledge, no such Vermont authority exists. *See Gade v. State Farm Mut. Auto. Ins. Co.*, No. 5:14-CV-00048, 2015 WL 7306433, at *13-15 (D. Vt. Nov. 19, 2015) (excluding plaintiff's proffered "bad faith" expert and stating that, in deciding a bad faith claim, a court "need not consider industry standards, or determine whether [the] processing of Plaintiff's claim was sufficient or consistent with those standards, or whether [the insurer] violated its own internal standards, protocols, or policies" because "[t]he Vermont Supreme Court has never held that these external standards must be considered in evaluating the first prong of a bad faith claim"). Other authorities similarly impose no such requirement. *See, e.g.*, 14A Couch on Ins. § 206:11 ("Expert testimony as to the wisdom of rejecting a compromise, while admissible in the discretion of the trial court, is not necessary . . . ." (footnote omitted)); *Crawford v. Am. Fam. Ins. Co.*, 212 N.E.3d 421, 429 (Ohio Ct. App. 2023) (same); *Bergman v. United Servs. Auto. Ass'n*, 742 A.2d 1101, 1106-07 (Pa. Super. Ct. 1999) (stating that "courts have consistently refused to require expert testimony as a necessary prerequisite to the submission of bad faith claims" and listing cases).

In an action for bad faith handling of an insurance claim, "[t]he insured's damages are the difference between the judgment and the policy limit, plus interest and costs." *Myers*, 146 Vt. at 558, 508 A.2d at 692; *see also* 14A Couch on Ins. § 206:51 (in context of bad faith failure to settle, "it is widely held that the insured can recover the amount in excess of the policy limit from the liability insurer"); 1 Insurance Claims and Disputes § 5:21 (6th ed.) ("when an insurance company breaches its duty to settle, it will, in most jurisdictions, be deemed to have acted in bad faith, and will be liable to the insured for a judgment or settlement beyond its policy

limits"); *Moutsopoulos v. Am. Mut. Ins. Co. of Bos.*, 607 F.2d 1185, 1188-89 (7th Cir. 1979) (under "the general rule established in other jurisdictions[,] '[t]he normal recovery, where the insurer's actionable bad faith or negligence is established and an excess judgment is recovered, is the amount for which the insured becomes charged in excess of his policy coverage'" (quoting 44 Am. Jur. 2d Insurance § 1532 (1969))). That difference here is $1.5 million. Accordingly, Hanover is liable for the entirety of the $3.5 million verdict entered against VCAM in the underlying case, plus interest and costs.

VCAM also seeks attorney's fees. In Vermont, an award of fees is not automatic on a successful insurance bad faith claim. *See Myers*, 146 Vt. at 558, 508 A.2d at 692 ("Attorney's fees under our practice are not awarded absent special legal authority or as a matter of contract."); *see generally* 14A Couch on Ins. § 206:53. Absent a statutory or contractual provision, Vermont courts apply the "American Rule" that requires parties to bear their own attorney's fees. *Monahan v. GMAC Mortg. Corp.*, 2005 VT 110, ¶ 76, 179 Vt. 167 (citing *DJ Painting, Inc. v. Baraw Enters.*, 172 Vt. 239, 246, 776 A.2d 413, 419 (2001)). Courts may invoke their equity powers to deviate from this rule, but "only in exceptional cases and for dominating reasons of justice." *Id.* (quoting *DJ Painting*, 172 Vt. at 246, 776 A.2d at 413). This equitable exception may allow an award of fees "when the other party has acted in bad faith":

> Bad faith conduct held to justify the award of counsel fees has been found where one party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, where the litigant's conduct can be characterized as unreasonably obdurate or obstinate, and where it should have been unnecessary for the successful party to have brought the action.

*Depot Square Pizzeria, LLC v. Dep't of Taxes*, 2017 VT 29, ¶ 16, 204 Vt. 536 (quoting *Harkeem v. Adams*, 77 A.2d 617, 619 (N.H. 1977)). "This power must be exercised with cautious restraint, however – only in those exceptional cases where justice demands an award of attorney's fees, such as where a party is unjustly forced to endure a second round of litigation." *Sutton v. Purzycki*, 2022 VT 56, ¶ 63, 217 Vt. 326 (quotation omitted).

Despite Hanover's bad faith conduct, fees are not warranted here. In addition to the bad faith, there was a good faith legal dispute as to the scope of coverage available under the policy. Even if Hanover had timely informed VCAM of its coverage decision, VCAM likely would have hired independent counsel at that time to contest the legitimate coverage dispute. VCAM has offered no basis to distinguish those fees incurred to litigate the good faith coverage dispute from those incurred to prosecute its bad faith and other counterclaims. Importantly, this is not a claim for bad faith denial of coverage or the duty to defend, where the expenditure of attorney's fees would be the obvious consequence of the insured's actions. Rather, this is a claim for bad faith handling of a third-party claim, where the obvious damage award is "the difference between the judgment and the policy limit, plus interest and costs." *Myers*, 146 Vt. at 558, 508 A.2d at 692. Moreover, the Court is not persuaded by VCAM's argument that "Hanover's conduct in this litigation [also] reflects bad faith litigation behavior." VCAM's Mot. for Summ. J. at 12. While the Court rightfully admonished Hanover for its "reflexive denials" that "test the limits of the obligation of candor to the tribunal" in the context of the earlier summary judgment motions, *see*

12

Dec. on Cross-Mots. for Summ. J. at 2 n.3 (May 14, 2025), this does not rise to the high standard of bad faith litigation conduct required to award attorney's fees.

Nor do the authorities cited by VCAM persuade the Court that an attorney's fees award is required or even appropriate here. Those cases merely state the unremarkable point that bad faith or outrageous conduct is a prerequisite for awarding attorney's fees under Vermont law, *see Concord Gen. Mut. Ins. Co. v. Woods*, 2003 VT 33, ¶ 18, 175 Vt. 212 (no attorney's fees awarded in absence of finding of bad faith or outrageous conduct); *DJ Painting*, 172 Vt. at 246-47, 776 A.2d at 419-20 (same), or involve denials of coverage or the duty to defend rather than bad faith claims handling, *see Suffolk Fed. Credit Union v. CUMIS Ins. Soc., Inc.*, 910 F. Supp. 2d 446, 462 (E.D.N.Y. 2012) (bad faith denial of coverage); *Vill. of Morrisville Water & Light Dep't v. U.S. Fid. & Guar. Co.*, 775 F. Supp. 718, 734 (D. Vt. 1991) (same); *Hanover Ins. Co. v. Golden*, 746 N.E.2d 574, 576 (Mass. App. Ct. 2001), *aff'd,* 436 Mass. 584, 766 N.E.2d 838 (2002) (duty to defend); *Brown v. U. S. Fid. & Guar. Co.*, 46 A.D.2d 97, 99, 361 N.Y.S.2d 232, 234 (1974) (duty to defend); 2 Insurance Claims and Disputes § 9:24 (6th ed.) (discussing awards of attorney's fees for an "unreasonabl[e] refus[al] to defend or indemnify the insured"). Under these circumstances, the Court declines to invoke its equity power to deviate from the American Rule.

## II.     Consumer Protection Act

VCAM also alleges that Hanover violated Vermont's Consumer Protection Act. The Act prohibits "unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). "To sustain a consumer-protection claim, a plaintiff must (1) prove facts that meet the definition of an unfair or deceptive act under 9 V.S.A. § 2453(a), and (2) demonstrate the prerequisites to a private action under 9 V.S.A. § 2461(b)." *Mansfield v. Heilmann, Ekman, Cooley & Gagnon, Inc.*, 2023 VT 47, ¶ 32, 218 Vt. 359 (citing *Dernier v. Mortg. Network, Inc.*, 2013 VT 96, ¶ 56, 195 Vt. 113). "To maintain a private action under § 2461(b), a plaintiff must show either (1) reliance on a deceptive act in contracting for goods or services or (2) damages or injury from an unfair or deceptive act." *Mansfield*, 2023 VT 47, ¶ 34. For reliance claims, "no actual injury is required." *Id*. For damages claims, "a plaintiff must prove causation and injury." *Id*. (citation omitted).

Here, VCAM contends that Hanover engaged in "deceptive representations and material omissions that caused [it] substantial harm." VCAM's Mot. for Summ. J. at 13. To establish a "deceptive act or practice" under the Act requires three elements: "(1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." *Madowitz v. Woods at Killington Owners' Ass'n, Inc.*, 2014 VT 21, ¶ 23, 196 Vt. 47 (quoting *Carter v. Gugliuzzi*, 168 Vt. 48, 56, 716 A.2d 17, 23 (1998)).

Hanover argues that VCAM is not entitled to summary judgment on its consumer protection counterclaim because the Act does not apply to insurance policies and because there is no evidence of deceptive practices. In 1981, our Supreme Court held that the Act as then-written did not apply to insurance policies. *Wilder v. Aetna Life & Cas. Ins. Co.*, 140 Vt. 16, 18, 433 A.2d 309, 310 (1981) ("the selling of an insurance policy is not a contract for 'goods or services'

within the meaning of [the Act]").  Then, in 1985, the legislature broadened the Act's scope to include "intangibles" and "services of any kind" within the definition of "goods or services."  9 V.S.A. § 2451a(2).  The Supreme Court has not revisited *Wilder* since the 1985 amendment and has left open the question of whether the Act applies to insurance.  *See Greene v. Stevens Gas Serv.*, 2004 VT 67, ¶ 10, 177 Vt. 90.

Several trial courts, however, have concluded that *Wilder* is no longer good law and that, under the 1985 amendment, the Act now covers insurance policies.  *See, e.g.*, *Mountainside Condominium v. Jamieson Risk Serv.*, No. 88-2-20 Wncv, 2024 WL 4172976, at *2-3 (Vt. Super. Ct. June 24, 2024) (Tomasi, J.); *Vermont Mut. Ins. v. Bradley*, No. 314-9-20 Wncv, 2021 WL 4303970, at *3-4 (Vt. Super. Ct. Jan. 11, 2021) (Bent, J.); *Johnson v. Smith Bros. Ins., LLC*, No. 1062-12-18 Cncv, 2020 WL 5875652, at *2 (Vt. Super. Ct. Feb. 18, 2020) (Toor, J.); *Stinson v. Union Mut. Fire Ins. Co.*, No. 103-7-18 Oecv, 2019 WL 13061475, at *4 (Vt. Super. Ct. Apr. 01, 2019) (Harris, J.); *Blake v. Progressive Northern Ins.*, No. 164-9-15 Oecv, 2016 WL 1167746, at *2 (Vt. Super. Ct. Feb. 04, 2016) (Tomasi, J.); *Bertelson v. Union Mut. Fire Ins. Co.*, No. 834-04 Cncv, 2004 WL 7325433, at *1 (Vt. Super. Ct. Nov. 22, 2004) (Norton, J.); *but see Nautilus Ins. Co. v. Loomis*, No. 194-9-10 Oecv, 2012 WL 1144698, slip copy at 4 (Vt. Super. Ct. Feb. 29, 2012) (Eaton, J.).  This Court finds those decisions persuasive and adopts their reasoning. Vermont's Consumer Protection Act covers insurance, at least generally.[7]

VCAM is not entitled to summary judgment on its consumer protection claim, however, because it has not established causation as a matter of law.  *See Mansfield*, 2023 VT 47, ¶ 34 (for damages claims, "a plaintiff must prove causation and injury" (citation omitted)).  VCAM bases its consumer protection claim on much of the same conduct that underlies its bad faith claim: that Hanover and/or its agent, Shahi, "repeatedly told VCAM that any verdict would be within [the policy] limits or reversed on appeal"; "refused to state its coverage position before the verdict, despite multiple, direct requests from VCAM to do so"; "solicited coverage advice from VCAM's appointed defense counsel and failed to disclose that conflict"; and "failed to disclose [Shahi's] prior $500,000 invasion-of-privacy verdict . . . awarded to him personally by a Vermont jury in a case that did not involve sexual exploitation, while contemporaneously projecting exposure of a mere $100,000 - $150,000 per plaintiff in his pretrial assessment."  VCAM's Mot. for Summ. J. at 16.  It contends that the "misleading effects" of Hanover's conduct are material because they "affected VCAM's litigation decisions – specifically, whether to obtain independent counsel and whether to push for settlement within limits."  *Id*. at 16-17.  VCAM asserts that these misrepresentations "caused [it] to fail to secure independent counsel or push for settlement within limits, which a reasonable insured would have done had it been aware of Attorney Shahi's

---

[7] It is not clear whether the specific conduct here occurred "in commerce," however.  *See Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 21 (discussing "in commerce" requirement).  While other states have held that their respective consumer protection acts encompass an insurer's conduct and provision of services following the sale of a policy, as opposed to merely the sale of the policy, *see, e.g.*, *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 58-59 (Colo. 2001) (listing cases); *Miller v. Risk Mgmt. Found. of Harvard Med. Institutions, Inc.*, 632 N.E.2d 841, 844-45 (Mass. App. Ct. 1994), Vermont courts have not addressed the issue.  *See Stinson*, 2019 WL 13061475, at *3 (identifying but not addressing issue).  In any event, neither party has raised or briefed the issue, and the Court need not address it now.

communications with Hanover or his personal recovery in invasion of privacy actions." *Id*. at 17. "As a result" of this deception, it "incurred an excess judgment of $3.5 million" plus interest, and the expenses of this counterclaim. *Id*.

But the Court cannot say based on this record that any reasonable jury *must* conclude that the bad faith conduct *caused* the lack of settlement and/or the amount of the excess judgment. Causation, of course, is ordinarily a matter for the jury to decide. *See Ziniti v. New England Cent. R.R., Inc.*, 2019 VT 9, ¶ 16, 209 Vt. 433 (negligence context). Importantly, the conduct underlying the consumer protection claim is somewhat narrower than that supporting the bad faith claim. For example, VCAM does not adequately explain how the failure to make a reasonable settlement offer, the failure to diligently investigate and evaluate the Kilburns' demand, and the unreasonable reliance on Attorney Shahi's speculative reasoning behind his valuation of a potential verdict can truly be considered "deceptive" under the Consumer Protection Act. In addition, VCAM has not established that the remaining "deceptive" conduct definitively caused the harm VCMA alleges so as to remove that issue from the jury's purview. Accordingly, VCAM is not entitled to summary judgment on this claim.

Order

Accordingly, for the foregoing reasons, VCAM's motion for summary judgment (Mot. # 9) is GRANTED as to its bad faith counterclaim and DENIED as to its Consumer Protection Act counterclaim.

Hanover's motion for leave to file a sur-reply (Mot. # 12) is GRANTED (except as to the substitute affidavit, as discussed in note 6), and the Court has considered the sur-reply in deciding the summary judgment motion.

Hanover's motion to compel (Mot. # 13) is DENIED for failure to comply with Rule 26(h)'s requirement that parties must "confer" (i.e., talk) in good faith prior to filing any such motion.

The parties shall submit any stipulated amended discovery scheduling order within 14 days. If nothing is submitted, this matter will be set for a pretrial conference during the next jury draw cycle.

Electronically signed on May 11, 2026 at 12:51 PM pursuant to V.R.E.F. 9(d).

_____
Megan J. Shafritz
Superior Court Judge

15